**Evelyn HAMBY, Jennie May Ashby, J. C. Brandon, Felix Branch, Mary F. Black, Brenda Johnson, Mary Taylor, Jewell Myers, Ethel Crownover, and Frances Evans, Individually and as representatives of Genesco Employees, Plaintiffs-Appellants,**

v.

**GENESCO, INC., Defendant-Appellee.**

Court of Appeals of Tennessee, Middle Section at Nashville.

Nov. 5, 1981.

Application for Permission to Appeal Denied by Supreme Court Jan. 25, 1982.

Gregory M. O'Neal, Swafford, Davis, Peters & O'Neal, Winchester, for plaintiffs-appellants.

Ben P. Lynch, Lynch, Lynch & Lynch, Winchester, Andrew T. Smith, Genesco, Inc., Nashville, for defendant-appellee.

## OPINION

LEWIS, Judge.

Plaintiffs filed their complaint against defendant Genesco, Inc. (Genesco) and alleged that they were entitled to compensation because Genesco had not complied with certain procedures concerning job certification, seniority, "roll-down rights," and the payment of guaranteed employment hours as set forth in the "General Shoe Employees Handbook" (handbook) which they insist is a part of their employment contract with Genesco.

Genesco, in its answer, denied that the handbook was a part of the employment contract and, in any event, it had paid each of the plaintiffs all the compensation they were entitled to receive.

The Chancellor, after a bench trial, found that "[t]he employees handbook becomes a contract when the employees accept employment under the conditions outlined in the handbook" but that plaintiffs were not "entitled to any relief" and dismissed the complaint.

On appeal, plaintiffs contend that the Chancellor erred in finding "that the provisions of the handbook did not apply" to their situation, and Genesco contends that the Chancellor erred in finding that the handbook "constitutes a valid, enforceable contract."

The pertinent facts which are not materially in dispute are as follows:

Plaintiffs at one time had all been employed at Genesco's Cowan plant which had been in operation for more than thirty years.

Because of economic conditions caused by foreign competition and a general downturn in sales, production at the Cowan plant had dropped considerably by late summer 1978.

In the week ending July 31, 1978, the plant produced approximately three hundred and fifty dozen pairs of shoes. The last week in August, 1978, the plant produced less than two hundred and fifty dozen pairs of shoes and employed four hundred and fifty production employees. Production continued to drop and by the last week in October, less than one hundred fifty dozen pairs of shoes were produced. As production dropped, employees were laid off due to a lack of work. With layoffs and normal attrition, the production force at the Cowan plant was approximately three hundred at the week ending October 30, 1978.

Because of a further production drop, on November 13, 1978, Genesco informed the plant employees that the plant would be temporarily closed. At the time this decision was made, some shoes were in production but there were no new orders.

The employees were informed that the shoes in production would be finished and shipped and that as each department completed its work, employees of that department would be laid off. This procedure was known as "runout of the plant."

The layoffs began shortly after November 13, 1978, and as production was finished in each department, an employee whose work was finished was laid off. These layoffs continued in each department until approximately the first week in December when all employees, except the packing department, had been laid off and they were to be laid off as soon as the last shoes were packed and shipped.

Early in December, 1978, Genesco discovered that some ninety thousand pairs of shoes produced at its Ripley, Mississippi, plant and stored in a warehouse in Huntsville, Alabama, had begun to fade and mold.

It was necessary to unpack, clean, refinish, and repack these shoes. This procedure was a packing department operation and would normally have been done at the Ripley plant. However, since the Ripley plant was in full production and it would have required overtime work of Ripley employees, it was decided to send the shoes to the Cowan plant for "reworking."

During the first week in December, 1978, the shoes began arriving from the warehouse in Huntsville and were reworked by the packing department employees who were still employed at the Cowan plant.

The reworking of the Ripley shoes kept some of the packing department employees working beyond the time when the last production of shoes by the Cowan plant was complete.

There were forty two employees working in the packing department on or after January 1, 1979. The last packing department employee was laid off January 10, 1979.

Genesco had hoped to generate new business for the Cowan plant but was unable to do so and, in March, 1979, employees of the Cowan plant were notified that the plant would be closed permanently.

We first discuss whether the handbook is a part of the employment contract between plaintiffs and Genesco.

■ The employer-employee relationship is contractual in nature. 53 Am.Jur.2d *Master and Servant* § 14 (1970). *See, also, Seals v. Zollo*, 205 Tenn. 463, 327 S.W.2d 41 (1959). The employer-employee relationship is the product of an agreement or series of agreements between the employer and employee, including, but not limited to, the nature of the work to be performed, the duration of the employment and the terms and conditions of the employment.

The first page of the employees handbook furnished to each Genesco employee contains the following:

The policies contained in this booklet are the result of over 52 years of thoughtful planning, with the management of this business working individually in harmony

and understanding with the people in the General Shoe Company organization. We invite suggestions from employees on changes that might be adopted and included in the handbook.

So long as these relationships continue, these shall be

The Guaranteed Policies, Practices and Procedures of

GENERAL SHOE

COMPANY.

The first paragraph of the forward to the handbook is as follows: "This handbook is written so that each employee may know and get equal benefits from these policies that apply to all regardless of age, race, color, religion, sex, handicap, national origin or status as a veteran."

■ We are of the opinion that the Chancellor correctly held that the handbook was a part of the contract of employment between plaintiffs and Genesco.

■ We are also of the opinion that the Chancellor correctly held that plaintiffs had been paid all of the compensation and received all benefits to which they were entitled.

When a plant is shut down as the Cowan plant was, it takes approximately two weeks from start to finish to make a pair of shoes, i.e., "runout the plant." During this two-week period, every department is involved in the making of the shoes.

The making of shoes is a highly skilled job and requires a great deal of experience and training. In a shutdown of the plant, if all employees are allowed to rollback, employees would be continually rolling down from one job to another during the two-week period and the evidence is that the normal two-week period would be stretched much longer.

All of the evidence from both plaintiffs' and Genesco's witnesses is that "rollbacks" had never been allowed in a plant shutdown situation. The rollback policy was instituted to provide senior employees with security. To allow rollbacks for a two-week period would not provide security.

Further, the rollback provision provides that "rollbacks must be made in such a way as to maintain a balanced production force." To allow rollbacks in a plant shutdown situation would not allow the Company to maintain a balanced production force. Employees would be constantly rolling from one job to another during the two-week period.

Plaintiffs' contention that the rollback provision should have been followed during the shutdown period is without merit.

The judgment is affirmed with costs to plaintiffs and the cause remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

CANTRELL and CONNER, JJ., concur.