**Margie GRAVES, Plaintiff-Appellant,**

v.

**ANCHOR WIRE CORPORATION OF TENNESSEE, Defendant-Appellee.**

Court of Appeals of Tennessee,
Western Section.

Feb. 5, 1985.

Application for Permission to Appeal
Denied May 6, 1985.

Charles R. Ray, Nashville, for plaintiff-appellant.

Robert L. Ballow, R. Eddie Wayland, Nashville, for defendant-appellee.

CRAWFORD, Judge.

Plaintiff, Margie Graves, appeals from the order of the trial court granting summary judgment to defendant, Anchor Wire Corporation of Tennessee. There were no affidavits filed in support of or opposition to the motion for summary judgment. The record consists of pleadings, exhibits and depositions. Our review of the record reveals the following pertinent facts:

Anchor hired Graves in 1976 as the sole night-shift worker in their braider room. Shortly after she began work, Anchor furnished her with an employee handbook that set forth company policies, benefits, rules and regulations. The pertinent sections of this handbook outlined employee discipline and discharge. In addition, it urged employees to initiate meetings with their supervisors to discuss work-related problems. This handbook remained in effect during the entire time of Graves employment. Neither the handbook nor other Anchor employees gave Graves any assurance of employment for any definite time.

During the time that Graves worked at the Anchor plant, Anchor prepared weekly production reports for each of its employees. The employees either received their individual production reports or reviewed these reports with their supervisors on a weekly basis. The night supervisor did not object to the employees entering his office and reviewing their reports during their breaks.

In April, 1982, Anchor hired a second person to work with Graves in the braider room. In early July, 1982, Graves became concerned that the second person was not doing her share of the work. Even though Graves received a set wage regardless of the production reported, she asked that a production report be prepared for each of them rather than for their department as a unit. Anchor management denied this request. On July 7, Graves went into her supervisor's office and took not only the braider room report, but also the entire record of plant productions. She took these documents back to her work area, placed them in her tote bag and admittedly planned to remove them from the plant in order to study them before returning the next day to discuss her work situation with the supervisor. Prior to the time her shift ended, Graves' supervisor learned that she had removed the sheets from the office, retrieved the papers, and told her to leave the premises immediately. The next day, July 8, 1982, Anchor fired her.

After her dismissal, Graves filed for unemployment compensation with the Tennessee Department of Employment Security. She was denied benefits on the basis that her discharge was occasioned by her misconduct. Subsequently, Graves filed this lawsuit.

The first issue Graves presents for review is:

1. Whether the employee handbook in the case at bar created an implied contract of employment thereby altering appellant's status as an employee at will.

In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. *Bennett v. Mid-South Terminals Corp.*, 660 S.W.2d 799 (Tenn.App.1983).

Graves concedes that an employee under a contract of employment at will may be terminated by his employer at any time with or without cause. Graves contends that the employee handbook furnished to

her after she began work was an implied contract of employment for an indefinite term and thus was not an employment contract at will. She relies on *Hamby v. Genesco, Inc.,* 627 S.W.2d 373 (Tenn.App.1981) in support of this contention.

There are several fallacies in Graves' argument. First, the *Hamby* case is not applicable to the case at bar. *Hamby* did not involve an employee termination, but involved a suit to recover benefits of employment. From our examination of *Hamby,* we cannot ascertain the terms of the contract insofar as termination of employment is concerned, and we surmise the contract involved was an employment at will contract. Second, assuming arguendo that the handbook furnished to Graves created an implied contract of employment, we agree with Graves' statement in her brief that it created an "implied contract of employment for an *indefinite* term." (Emphasis supplied).

 The law is well established in this state that a contract for employment for an *indefinite* term is a contract at will and can be terminated by either party at any time without cause. *Whittaker v. Care-More, Inc.,* 621 S.W.2d 395 (Tenn.App. 1981). There has never been any contention on the part of Graves that she was hired for any definite term and there is no dispute as to any material fact in regard to the term of employment. In view of the facts of this case, we can only assume that Graves is seeking for this court to change the well-established law in the state concerning contracts of employment terminable at will. To respond to this assertion, we adopt the statement of Judge Conner in *Whittaker v. Care-More, Inc., supra:*

> It is not the province of this court to change the law as plaintiffs assert. That prerogative lies with the supreme court or the legislature. However, based upon our review of this area of the law we are compelled to note that any substantial change in the "employee-at-will" rule should first be microscopically analyzed regarding its effect on the commerce of this state. There must be protection from substantial impairment of the very legitimate interests of an employer in

hiring and retaining the most qualified personnel available or the very foundation of the free enterprise system could be jeopardized.

621 S.W.2d at 396.

 Since we find no dispute as to any material fact, we concur in the ruling of the trial court. In passing, however, we note that Graves was discharged for taking confidential company reports with the intent to take them from the plant premises. She admitted in her deposition that her actions were a cause for discipline, but argued that suspension would have been a more appropriate action on the part of the company. We have reviewed the employee handbook and find no dispute of any material fact created by the terms therein concerning the right of the company to discharge an employee for such actions.

In view of our decision on the first issue, it is not necessary that we consider the other issues presented for review. Accordingly, we affirm the order of the trial court granting summary judgment to defendant. Costs of the appeal are adjudged against the appellant.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.