Donald V. GREGORY, Plaintiff–
Appellant,

v.

James C. HUNT; Howard Carmen; Mary Finn; Bettie Puckett; Warren J. Shadko; John Butler, individually and in their official capacities; University of Tennessee, Defendants–Appellees.

No. 93–5291.

United States Court of Appeals,
Sixth Circuit

May 18, 1994.

---

**783**

David M. Sullivan, Memphis, TN (briefed), for plaintiff–appellant.

Ronald C. Leadbetter, Assoc. Gen. Counsel (briefed), Beauchamp E. Brogan (briefed), University of Tennessee Knoxville, TN, for defendants–appellees.

Before: MERRITT, Chief Judge; and GUY and BOGGS, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Donald V. Gregory, appeals the district court's grant of summary judgment in favor of six individual defendants,[1] sued individually and in their official capacities, and the University of Tennessee at Memphis. Pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986, Tenn.Code Ann. § 4–21–101, *et seq.*, and Tenn.Code Ann. § 47–50–109, Gregory claims that his constitutionally recognized property right in continued employment as a police lieutenant in the Office of Security Affairs at the University of Tennessee was violated when he was discharged. For the following reasons, we affirm.

## I.

On June 27, 1983, Gregory was hired by the University of Tennessee as a police officer in the Office of Security Affairs. He was employed without a written contract and for an unspecified period of time. The University policy pertaining to his employment states:

> Faculty are employed for a term of one year or other specified period of time subject to renewal in accordance with the policies and procedures set forth in the applicable Faculty Handbook. All other employees are not employed for a specified period of time but, instead, serve on an "at will" basis subject to the policies and procedures set forth in the Personnel Policies and Procedures Manual.

By letter of January 27, 1989, Warren J. Shadko, Assistant Vice Chancellor for Security Affairs, advised Gregory that his employment as a University police officer would be terminated effective that day. There was no notice or pre-termination hearing, and the letter set forth no reason for the termination. That same day, Gregory delivered a written request for a hearing to Mary Finn, Personnel Services Manager/Human Resources. Finn informed Gregory that, because he had been terminated for "inadequate work performance," he was not entitled to a hearing under the written University policies and procedures. Finn further advised Gregory that he could submit a written request for a hearing to Chancellor James C. Hunt.[2]

On January 30, 1989, Gregory delivered a letter to Hunt requesting a hearing on his termination. Gregory's counsel later asked Hunt to provide the specific reason(s) for Gregory's termination. Hunt complied with the request. Gregory's attorney then addressed the termination issues in a brief.

---

1. The individual defendants are James C. Hunt, Howard Carmen, Mary Finn, Bettie Puckett, Warren J. Shadko, and John Butler.

2. Shadko completed a University of Tennessee Personnel Action Form for Gregory's personnel file a day or two later, indicating the reason for termination as "failure to follow clear instruc-

tions." Several days after termination, John Butler, Deputy Chief of the Office of Security Affairs, completed a change of status form for the Tennessee Peace Officer Standards and Training Commission, stating that Gregory had been terminated for violating department policy and procedures.

Hunt subsequently elected to conduct an informal hearing.

The hearing was held May 3, 1989. Hunt allowed Gregory to make a statement. Shadko was also allowed to make a statement. Shadko's statement contained "incidents" not previously cited, and he referred to documents not furnished to Gregory's counsel. Hunt ordered Gregory's attorney not to confer with Gregory during the hearing, but allowed them to confer outside the hearing room. Gregory objected to the introduction of the new material and Hunt's refusal to allow his attorney to confer with or advise him during the course of the hearing. Hunt asked Gregory if he wished to continue the hearing; Gregory replied that he would not participate any further.

Following the conclusion of the hearing, and after reviewing Gregory's record and several "position papers" submitted by Gregory's attorney and Shadko, Hunt advised Gregory, by letter of July 11, 1989, of his decision to affirm the termination. At the same time, Hunt offered Gregory re-employment as an entry-level police officer with longevity credit for his prior service, but Gregory rejected the offer.

Gregory then commenced this action, seeking reinstatement and back pay, as well as compensatory and punitive damages. Under federal and state laws, Gregory claimed that he was deprived of both property and liberty interests in violation of his constitutional right to due process. The district court granted summary judgment for the defendants on the claims brought under §§ 1981, 1983, 1985 and 1986, and dismissed the state law claims.[3] The court found that Gregory lacked a property interest in continued employment, and that Gregory received a constitutionally sufficient hearing for any charge implicating his liberty interest.

## II.

■■■■ We review a district court's grant of summary judgment under a de novo standard of review. *EEOC v. University of De-*

*troit,* 904 F.2d 331, 334 (6th Cir.1990). We examine the grant of summary judgment to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Although we must draw all justifiable inferences in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), that party must show that there exists a disagreement regarding an item of material fact. *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir. 1986). The evidence presented must be sufficient to permit the plaintiff to recover if accepted by the jury.

## III.

### A. Property Interest

The Supreme Court has recognized that an individual may have a "property" interest in public employment. In *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Court stated:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

In *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), decided the same day as *Roth,* the Supreme Court expanded on the "property" interest concept: "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." The

---

3. There is a possible jurisdictional defect as to the constitutional claim brought against the University. It is not clear whether or not the district court's order dismissed this claim. Nevertheless,

because the district court and the parties have proceeded under the assumption that the court's order disposed of the entire case, so will we.

Supreme Court later stated: "A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) (footnotes omitted).

■ The doctrine of employment at-will has long been recognized in Tennessee, with the concomitant right of either party to terminate such a relationship with or without cause. *See Chism v. Mid-South Milling Co.,* 762 S.W.2d 552, 555 (Tenn.1988). Recently, the Supreme Court of Tennessee stated:

> The employment at-will doctrine has been a part of Tennessee's common-law legal tapestry for more than a century. The doctrine recognizes the concomitant right of either party to terminate such a relationship with or without cause. On the other hand a contract of employment for a definite term may not be terminated before the end of the term, except for good cause or by mutual agreement, unless the right to do so is reserved in the contract. It is possible that some contractual right might accrue to an employee as the result of an unlawful termination of such a contract. However, without a clear contract under which such rights may vest, employees in this State possess no property right in their employment under the circumstances which we have at hand. We know of no court decision, nor have we been referred to one, which holds that an employee has a contractual right under the employment at-will doctrine.

*Bennett v. Steiner–Liff Iron and Metal Co.,* 826 S.W.2d 119, 121 (Tenn.1992) (citations omitted).

■ An at-will public employee does not have a property interest in continued employment unless it can be shown that the employee had a reasonable expectation that termination would be only for good cause. *See Chilingirian v. Boris,* 882 F.2d 200, 203 (6th Cir.1989) ("a public employee does not have a property interest in continued employment when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause"); *Bleeker v. Dukakis,* 665 F.2d 401, 403 (1st Cir.1981) ("This lack of any reasonable expectation of continued employment suffices to establish the lack of 'property' in the constitutional sense, and hence the lack of a viable due process claim.").

Gregory argues that despite Tennessee's strict adherence to the employment at-will doctrine, he had legitimate expectations that he would not be discharged without good cause. He focuses on section 100 of the Personnel Policies and Procedures Manual, which states: "All ... employees ... serve on an 'at will' basis subject to the policies and procedures set forth in the Personnel Policies and Procedures Manual." Gregory maintains that various provisions in the manual and the Employee Handbook create an implied contract whereby he can only be discharged for cause and, thus, he did have a protectible property interest.

■ Gregory's contention must be reviewed under Tennessee law. Most relevant to our inquiry are those cases that have analyzed what effect an employee handbook has on an employment at-will relationship. Tennessee courts and district courts interpreting Tennessee law have recognized that an employment relationship may, under appropriate circumstances, be modified by promises or representations incorporated into employee handbooks. *Williams v. Maremont Corp.,* 776 S.W.2d 78 (Tenn. Ct.App. 1988). The determination of whether an employee handbook is deemed to be part of the employment contract depends upon the specific language of the handbook. Only where the language is specific in stating that the employment manual provides certain guaranteed policies or practices will the employment manual be deemed part of the employment contract. *Smith v. Morris,* 778 S.W.2d 857 (Tenn. Ct.App.1988); *MacDougal v. Sears, Roebuck & Co.,* 624 F.Supp. 756 (E.D. Tenn. 1985). In none of the cases, however, has a court found the terms of an employee handbook converted at-will employment into a protectible property interest. *See, e.g., Claiborne v. Frito–Lay, Inc.,* 718 F.Supp. 1319 (E.D. Tenn.1989) (finding the language in the employee handbook was too vague to consti-

tute a contract of employment); *MacDougal*, 624 F.Supp. at 756 (same); *Whittaker v. Care–More, Inc.*, 621 S.W.2d 395 (Tenn. Ct. App.1981) (same).

■ The case most on point is *Graves v. Anchor Wire Corporation of Tennessee*, 692 S.W.2d 420 (Tenn. Ct.App.1985). In *Graves*, the plaintiff maintained that the employee handbook furnished to her after she began work created an implied contract of employment, thereby altering her status as an employee at-will. In support of this contention, she relied on *Hamby v. Genesco, Inc.*, 627 S.W.2d 373 (Tenn. Ct.App.1981), in which the court had found the language in an employee handbook was specific enough to constitute terms of an implied contract. The *Graves* court easily distinguished *Hamby*, however, noting that *Hamby* did not involve an employee termination, but involved a suit to recover benefits of employment. The *Graves* court then held that the terms of the employee handbook did not outweigh "the well-established law in [Tennessee] concerning contracts of employment terminable at will." *Graves*, 692 S.W.2d at 422. Thus, under Tennessee law, it appears that the Personnel Manual and Employee Handbook would not be enough to convert Gregory's at-will employment into a protectible property interest.

This finding is consistent with other cases decided by this court. For instance, Gregory draws our attention to the "University Work Rules" section of the Employee Handbook, which lists acts that if committed could "be cause for disciplinary action including possible termination." Gregory argues that these rules created an implied contract to discharge only for cause. We rejected a similar contention in *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir.1986). In *Reid*, the plaintiffs signed an application for employment providing that "employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company or myself." *Id.* at 456. Once employed, plaintiffs received an employee handbook, "Getting Acquainted with Sears," that listed specific conduct for which the employer could terminate its employees. The plaintiffs argued that "by listing conduct that 'may result

in the termination of your employment' in the handbook Sears limited its right to discharge employees and that a discharge for any other reason would not be for good cause." *Id.* at 460. Rejecting this argument, we said:

> We do not believe the listing of causes that "may result in the termination of your employment" in the Sears handbook detracted in any way from the language in the application or provided a reasonable basis for the conclusion that the plaintiffs were employed under a "for cause" contract. The fact that certain acts were identified as conduct that might lead to discharge did not indicate that these acts were the exclusive permissible grounds for discharge.

*Id.*

In *Pratt v. Brown Machine Co.*, 855 F.2d 1225 (6th Cir.1988), the plaintiff brought a wrongful discharge claim against his former employer. The plaintiff argued that because the employee handbook contained "Company Rules" that identified acts "that could 'result in disciplinary action ranging from verbal or written warnings to suspension or to immediate discharge depending upon the act and the circumstances,'" he had an implied contract to discharge only upon cause. *Id.* at 1233. In reviewing this contention, we noted that the employee handbook also contained a "tear-out page," which read as follows:

> I hereby acknowledge receipt of a copy of the "Brown Hourly Employee Handbook," and affirm that I realize the significance of the rules, policies and information in this handbook. I also understand these policies are subject to change by management, unilaterally and without notice.
>
> *It is agreed, that my employment with the Company, is at the will of the Company.*

*Id.* at 1228 (emphasis in text). Based on *Reid*, we held that the "Company Rules" section did not detract from the at-will language in the tear-out page, and thus there was not a jury issue as to an implied just cause contract. *See also Elsey v. Burger King Corp.*, 917 F.2d 256, 260 (6th Cir.1990) ("Because the policy manual at issue unequivocally established that the plaintiff's

employment was at-will, the plaintiff cannot avoid summary judgment[.]"); *Chilingirian,* 882 F.2d at 205 (holding that a city attorney did not have constitutionally protected property interest in his employment in light of a city charter provision indicating that he served at the pleasure of the city council); *Dell v. Montgomery Ward and Co.,* 811 F.2d 970 (6th Cir.1987) (holding that various provisions in an employee reference guide did not create a legitimate expectation of continuing employment); *Windsor v. The Tennessean,* 719 F.2d 155, 159 (6th Cir.1983) ("When a supervisor possesses unconditional power to discharge a subordinate, that employee obviously has no entitlement to his job."), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984).

Gregory contends that he has a property interest in continuing employment primarily based on the provisions in the Personnel Manual and the Employee Handbook.[4] We have reviewed the manual and handbook and cannot find any language that unequivocally overcomes the express written policy of the University that Gregory was an at-will employee. Accordingly, we hold the district court was correct in finding Gregory did not have a protectible property interest in continued employment.

■ Even if we were to assume that Gregory did have a protectible property interest in continued employment, we would still have to affirm the district court's grant of summary judgment with respect to this issue based on this court's holding in *Woolsey v. Hunt,* 932 F.2d 555 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 195, 116 L.Ed.2d 155 (1991). In *Woolsey,* the plaintiff, a former secretary for the University of Tennessee Center for Health Sciences, filed a suit in district court, pursuant to 42 U.S.C. § 1983, claiming that she was wrongfully and illegally discharged without notice of the

charges against her and without opportunity for a pre-termination hearing as required by the due process clause of the Fourteenth Amendment and by the University's rules and regulations. Just as in the case before us, two of the defendants in *Woolsey* were Chancellor Hunt and the University of Tennessee.

■ The district court held in favor of the plaintiff, but on appeal that judgment was reversed. The *Woolsey* court began its analysis by noting that the requisite constitutional inquiry was whether the rules or understandings, "stemming from an independent source, such as state law, amount to an implied promise of continued employment." *Id.* at 561. The court then turned its attention to Tennessee law, and specifically examined the history of Tennessee's sovereign immunity doctrine. After reviewing relevant Tennessee cases, the Tennessee Code and actions taken by the Tennessee legislature, the court found that "Tennessee had waived its sovereign immunity only with respect to suits against the state based on an express contract or breach thereof." *Id.* at 565. In other words, Tennessee does not recognize the enforcement of an implied contract against the state. The court then summed up the implications of this finding:

Because, in 1984, Tennessee did not recognize the enforcement of an implied contract against the state and had not waived its sovereign immunity with respect to other than express contract claims against the state, we find that the district court erred in holding that plaintiff possessed a constitutionally protected property interest in continued employment for a period of six months or more. The district court failed to conduct the requisite analysis of state law in this case. Had it done so, no property interest would have been found to have stemmed from Tennessee law based on an implied contract.... In the instant

---

4. Gregory contends that other factors also created a property interest in his continued employment, such as "there was no established system for professional employees like [him] to gain permanent employment status after successfully completing the initial employment probation period like the tenure system for faculty members." These factors, at the most, created a subjective belief by Gregory that he would only be dis-

charged for cause, which is not enough to establish a protectible property interest. *See Roth,* 408 U.S. at 577, 92 S.Ct. at 2709 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.").

case, plaintiff's claim of entitlement is clearly insufficient when examined in light of Tennessee law.

This conclusion, that plaintiff does not possess a constitutionally protected property interest in continued employment with the University for the reason that Tennessee has not waived its sovereign immunity with respect to implied contract suits against the state, compels a finding also that the district [court] erred in holding Dr. Postlethwaite liable for damages in his individual capacity because Dr. Postlethwaite did not deprive plaintiff of a recognized property interest under state law.

*Id.* at 567–68 (citations omitted).

Here, although Gregory maintains otherwise, we agree with the district court's finding that Gregory's alleged property interest could have stemmed only from an implied contract. Any contention that there was a written express contract is belied by the language of the Personnel Manual that unequivocally classifies Gregory as an at-will employee. The other provisions in the Personnel Manual and Employee Handbook, at the most, contradict the at-will classification and are not specific enough to constitute a written express contract. Similarly, any assertion that there was an oral express contract is without merit. In *Woolsey*, there was an issue as to whether a mutual explicit understanding between plaintiff and defendants established an oral express contract. This court stated: "There is no point in time prior to plaintiff's termination which evidences a clear, definitive statement of the terms of an agreement regarding plaintiff's continued employment at the University. . . . Oral express contracts require the parties' express assent concerning their terms." *Id.* at 566 n. 9. We have reviewed the record and can find no evidence of Gregory and the defendants ever expressly assenting to any terms that would constitute an oral contract.

Having concluded that under these facts Gregory's alleged property interest could only arise from an implied contract, we find ourselves bound by this court's holding in *Woolsey*. Because the *Woolsey* court held that a claim based on an implied contract could neither lie against the state nor individuals sued in their individual capacity, so must we.

## B. Liberty Interest

We next consider Gregory's contention that the district court erroneously concluded that he was given an adequate opportunity to clear his name post-termination. In *Chilingirian*, this court stated:

[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment. Any deprivation of those interests, therefore, must be accompanied by notice and an opportunity to be heard to refute any charges against that person. Thus, when a "nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name." A name-clearing hearing is required only if an employer creates a false and defamatory impression about a particular employee in connection with his termination.

882 F.2d at 205 (citations omitted).

Whether Gregory is even entitled to a name-clearing hearing is not certain. This court has noted that "liberty interests are not implicated . . . by allegations of improper or inadequate performance or, in some cases, by charges of incompetence, neglect of duty or malfeasance. A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Id.* at 205–06 n. 8 (citations omitted). Shadko stated Gregory was terminated because he failed to follow clear instructions. Butler indicated that Gregory had been terminated for violating departmental policies and procedures. *See infra* note 2. While these statements may be unfavorable to Gregory, they do not deprive him of his interest in his "good name, honor, and integrity."

 Furthermore, even if we were to find Gregory suffered a deprivation of liberty, he was provided all of the process that

was due. A name-clearing hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." *Id.* at 206. No particular procedures are required except that the person receive a hearing at which he receives an opportunity to clear his name. *Id.* The district court found:

> Plaintiff was given the opportunity to respond to the reasons for his termination by the Chancellor of the University at an informal hearing on May 3, 1989. He prematurely terminated his own hearing by stating that he did not wish to continue. Plaintiff was provided an opportunity to respond in writing to any additional incidents mentioned at the hearing. Hunt gave full consideration to plaintiff's written reply in his final decision.

Gregory counters that the hearing was not fair because Hunt was not a neutral decision maker; Hunt was biased at the time of the hearing because he was aware that he might be a defendant in any litigation that arose from Gregory's termination. If this supposition is true, any bias Hunt may have held arguably would have been in favor of reinstating Gregory so as to avoid becoming a defendant. Moreover, we have reviewed the record and cannot find any evidence of bias interfering with a fair and adequate hearing. *See Crook v. Baker*, 813 F.2d 88, 99 (6th Cir.1987) ("Even if the decision was made 'by persons whose impartiality has been impugned,' that is nothing more than a finding that their impartiality has been assailed. It is not a finding that these persons were not impartial.").

We also note that the extent to which the statements at issue can be considered public is only through the records maintained by the University. Thus, the harm to Gregory's reputation was slight and the corresponding process necessary for him to clear his name only needed to have been minimal.

Gregory maintains nevertheless that his employability as a law enforcement officer has been and will continue to be affected by the University's records. At least two circuits have held, however, that charges giving rise to the termination of an employee which do not include allegations of serious charac-

ter defects, such as dishonesty or immorality, as a matter of law do not foreclose future employment opportunities. *See Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir.1982); *Gray v. Union County Intermediate Educ. Dist.*, 520 F.2d 803, 806 (9th Cir.1975). It is also significant that Gregory was offered re-employment, albeit under less favorable terms. If he was truly concerned about the impact his termination would have had on future employers, he could have accepted the re-instatement and then resigned at a later date.

As to the hearing itself, Gregory was permitted to confer with his attorney outside the hearing room, and, although communications between him and his attorney within the room were restricted, such restrictions on representation are not uncommon in informal hearings and do not render the entire name-clearing process unfair. *Cf. Yashon v. Hunt*, 825 F.2d 1016, 1026 (6th Cir.1987) ("This Circuit has already held that an individual is not entitled to the assistance of counsel in informal university administrative proceedings."), *cert. denied*, 486 U.S. 1032, 108 S.Ct. 2015, 100 L.Ed.2d 602 (1988); *Frumkin v. Board of Trustees*, 626 F.2d 19 (6th Cir.1980) (holding that a tenured college professor, who was discharged for stated reasons that adversely reflected upon him, was not entitled to have his counsel examine and cross-examine witnesses during the hearing that resulted in such findings). Evidence was introduced to Gregory's detriment for the first time at the hearing, but he was afforded an opportunity to respond at that time and subsequently in several "position papers." As previously indicated, a name-clearing hearing need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid. Gregory's failure to receive a hearing in the manner contemplated by him does not alter the fact that he did receive a hearing at which he was extended ample opportunity to clear his name. Given the circumstances of his termination, no more process was required. Accordingly, summary judgment was properly granted on this claim.

### C. Pendent State Law Claims

Gregory contends that the district court abused its discretion in dismissing his pendent state law claims. The crux of Gregory's assertion is that by filing his state claims in state court, he will be deemed to have waived his federal cause of action. *See White by Swafford v. Gerbitz*, 860 F.2d 661 (6th Cir. 1988), *cert. denied*, 489 U.S. 1028, 109 S.Ct. 1160, 103 L.Ed.2d 219 (1989). Having found Gregory has no federal cause of action, this issue is moot.

**AFFIRMED.**