UNITED STEELWORKERS OF
AMERICA, AFL–CIO–CLC,
Plaintiff,

v.

COMMONWEALTH ALUMINUM
CORPORATION, Defendant.

Civil Action No. 4:97–CV–112–M.

United States District Court,
W.D. Kentucky,
Owensboro Division.

Oct. 24, 1997.

John Christopher Sanders, Segal, Sales, Stewart, Cutler & Tillman, Louisville, David R. Jury, United Steelworkers of America, Pittsburgh, PA, for plaintiff.

Richard S. Cleary, Luann Devine, Greenebaum Doll & McDonald, Louisville, for defendant.

### MEMORANDUM OPINION AND ORDER

McKINLEY, District Judge.

This matter is before the Court on Cross–Motions for Summary Judgment by Plaintiff, United Steelworkers of America [hereinafter "Union"], and by Defendant, Commonwealth Aluminum Corporation ["Commonwealth"]. [DN2][DN4] This action is brought by Plaintiff pursuant to Section 301 of the Labor Management Relations Act of 1947 ["LMRA"], as amended, 29 U.S.C. § 185. Plaintiff seeks an order compelling Commonwealth to arbitrate certain grievances filed by Plaintiff in accordance with a grievance and arbitration procedure set forth in a labor agreement between the Parties. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Having been fully briefed, the matter is now ripe for decision. For the reasons discussed below, Defendant's Motion for Summary Judgment is **granted**; accordingly, Plaintiff's Cross–Motion for Summary Judgment is **denied**.

### I. Statement of Facts

Commonwealth and Union have been parties to successive collective bargaining

agreements since 1970. The collective bargaining agreement ["Agreement"] at issue became effective on May 8, 1995.

## A. The Agreement

Article 9 of the Agreement sets forth a four-step grievance procedure whereby employees in the bargaining unit can "grieve matters involving the interpretation and application of all provisions of [the Agreement]." Step 4 of the procedure provides that "[i]f no agreement can be reached in Step 3, the grievance may be appealed to arbitration by the Union."

Article 10 of the Agreement sets forth the procedures for arbitration, as well as the arbitrator's jurisdiction. Section 5 of Article 10 provides:

> The function and purpose of the arbitrator is to determine disputed facts *upon which application of the Agreement depends.* The arbitrator shall therefore not have any authority ... to so interpret or apply the Agreement as to change the intent of the parties as determined by generally accepted rules of contract construction. The arbitrator shall not give any decision which in practical effect modifies, revises, detracts from, or adds to any of the terms or provisions of this Agreement. [Emphasis added]

Article 17 of the Agreement, which deals with health insurance benefits for Union-represented employees, provides:

> The Group Insurance Benefits shall be set forth in booklets which shall be distributed to all employees within ninety (90) days of the effective date of this labor Agreement. These booklets, along with provisions of Appendix G, are incorporated herein and made a part of this Labor Agreement by reference.

Appendix G to the Agreement provides, in pertinent part, that "[t]he parties have agreed to amend the Medical Plan effective January 1, 1996. All changed provisions of the Medical Plan will be fully described in a summary plan description which will be printed and distributed to all employees prior to January 1, 1996." Appendix G also contains the negotiated changes to the Medical Plan.

Article 24 of the Agreement provides that the Agreement, and documents incorporated by reference. into the Agreement, constitute the parties' full agreement on negotiable matters. Article 24 further provides that "[t]here shall be no verbal agreements entered into by either party which add to, delete from, or in any way change the specific provisions of this Agreement."

## B. The Medical Plan

Pursuant to the terms of the Agreement, Commonwealth provides group health insurance benefits to its employees under a contract with CoreSource, Inc. ["Core-Source"]. Two benefit option plans are available to bargaining unit members: a Primary Care Network Plan and a Standard Plan. The present case concerns the Primary Care Network Plan ["Plan"].

Commonwealth is the "Plan Administrator." Coresource is the "Plan Supervisor." As Plan Supervisor, CoreSource makes the initial determination whether participants' benefit claims are payable under the Plan. As Plan Administrator, however, Commonwealth is responsible for all final benefit determinations.

The Plan contains a dispute-resolution mechanism called the Claims Review Procedure ["CRP"]. The CRP provides that "[i]n cases where a claim for benefits payment is denied in whole or in part, the claimant may appeal the denial." In addition, the Plan provides:

> If a Plan Participant's claim for a benefit is denied, in whole or in part... [t]he Plan Participant has the right to have the Plan review and reconsider the claim. Under ERISA there are steps that the Plan Participant. can take to enforce the above rights.... If the Plan Participant has a claim for benefits which is denied or ignored, in whole or in part, that participant may file suit in state or federal court.

Finally, the Plan provides that Plan Administrator's decisions interpreting the Plan are "final and binding."

On or about January 1, 1997, the Union filed five (5) grievances relating to Commonwealth's interpretation and application of the Plan. Each grievance alleged that Commonwealth violated Article 17 of the Agreement. One grievance basically challenged a primary care physician's refusal to issue a referral for elective surgery. Another grievance alleged that Commonwealth violated the Agreement by allowing CoreSource to deny certain reimbursement benefits after the employee contacted CoreSource to ensure that he was following the proper procedure. A third grievance claimed that Commonwealth violated the Agreement by "allowing Core-Source to require referrals" for certain procedures associated with biannual OB/GYN office visits. A fourth grievance contends that Commonwealth violated the Agreement by "allowing CoreSource" to require a pre-referral from out-of-area plan participants to receive in-network benefits. A fifth grievance is a "general" grievance claiming that Commonwealth violated the collective bargaining agreement by making unspecified unilateral changes to health care benefits.

Commonwealth responded to the grievances by maintaining that issues relating to the Plan are not grievable or arbitrable and must be settled through the Plan's Claims Review Procedure. Commonwealth also stated its position that no changes had been made to the agreed-upon health insurance coverage. The Union thereafter notified Commonwealth that the Union had elected to appeal the grievances to arbitration pursuant to terms of the Agreement.

On July 2, 1997, the Union filed the present action requesting the Court to compel Commonwealth to arbitrate the grievances at issue.

## II. Standard of Review

In order to grant a motion for summary judgment, the court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although the court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Rule requires the nonmoving party to present *"specific facts* showing there is a *genuine* issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also Gregory v. Hunt*, 24 F.3d 781, 784 (6th Cir.1994) (plaintiff not entitled to trial merely on the basis of allegations; plaintiff must present "significant probative evidence" from which jury could reasonably find for her). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict; thus, summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

 

## III. Discussion

Although it is well-established that doubts about arbitrability in a labor agreement should be resolved in favor of arbitration, the Court may compel arbitration only over those issues the parties have agreed by contract to arbitrate. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). Where the arbitration clause is as broad as the one in the present case, the presumption of arbitrability is particularly strong. *Id.* Absent any express provision excluding a particular grievance from arbitration, only "the most forceful evidence" of an intent to exclude the issue from arbitration will allow the reluctant party to prevail. *Id.*

In the present case, the Court is convinced that the Union and Commonwealth did not intend to subject Plan benefit determinations to arbitration. First, the Plan expressly sets forth a Claims Review Procedure to handle disputes concerning claims. Secondly, the Plan informs employees that:

> [i]t is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. The decisions of the Plan Administrator will be final and binding on all interested persons.

The Union argues that there is no language in the Plan specifically barring resolution of coverage disputes through arbitration. However, the Court disagrees. The intent to not arbitrate disputes concerning the denial of medical plan benefits is expressly stated by the inclusion of the claims review procedure and the language

stating that the decisions of the Plan Administrator are final and binding. *See Local Union No. 4-449, Oil, Chem., & Atomic Workers Union v. Amoco Chem. Corp.,* 589 F.2d 162, 164 (5th Cir.1979) and *IAM v. Waukesha Engine Div., Dresser Industries,* 17 F.3d 196, 198 (7th Cir.1994).

The Court having thoroughly reviewed the matter, having set forth its views above and being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that the Motion by Defendant, Commonwealth Aluminum Corporation, is **granted.** Accordingly, the Cross–Motion for Summary Judgment by Plaintiff, United Steelworkers of America, is **denied.**

THIS IS A FINAL AND APPEALABLE ORDER; THERE IS NO JUST CAUSE FOR DELAY.