**Steven R. ISAAC, Plaintiff,**

v.

**James CONRAD, Administrator, Ohio Bureau of Workers' Compensation, et al., Defendants.**

No. C–2–98–338.

United States District Court, S.D. Ohio, Eastern Division.

March 9, 1999.

Charles E. Brant, Isaac, Brant, Ledman & Teetor, Columbus, OH, for plaintiff.

Marion Little, Zeiger & Carpenter, Columbus, OH, for defendants.

### OPINION AND ORDER

SARGUS, District Judge.

This case is before this Court on Defendants' Motion to Dismiss. For the reasons that follow, this Court finds that the Complaint fails to state a claim upon which relief may be granted. Accordingly, the Motion will be granted.

### I.

This matter arises as a result of a termination of employment that occurred on or about November 7, 1997. Plaintiff, Steven R. Isaac ("Isaac"), was selected by Defendant, James Conrad, Administrator of the Bureau of Workers' Compensation, in March of 1996 to fill the position of Chief Operating Officer ("C.O.O.") for the Ohio Bureau of Workers' Compensation ("Bureau"). (Complaint, ¶ 8.) This unclassified position was specifically created under Ohio Revised Code, Section 4121.121(C).[1] Under the terms of the statute, the Administrator of the Bureau appoints the C.O.O. with the advice and consent of the Ohio Senate. (Comp., ¶ 8.) Isaac was approved by the Senate and served as the C.O.O. from March of 1996 until his termination in November of 1997. (Comp., ¶¶ 8, 17.) The facts surrounding Isaac's termination serve as the basis of this lawsuit.

Isaac's primary goal as the C.O.O. was to convert the Bureau's care of injured workers to a privately run managed-care system. (Comp., ¶ 10.) Isaac alleges that he satisfactorily accomplished the goals which had been established for him when he accepted the C.O.O. position. (Comp., ¶ 10.)

In September of 1997, Isaac returned to his office from a meeting to find a briefcase with no identification on the outside. (Comp., ¶ 12.) Isaac opened the briefcase in order to find some identification. (Comp., ¶ 12.) Inside, Isaac found billing documents for emergency medical and other health related services, letters to municipalities about receiving reimbursements from the Bureau for emergency medical and other health related services, and business cards of another Bureau employee.[2] (Comp., ¶ 12.) Isaac believed that the contents of the briefcase indicated that the Bureau employee was using his position to gather information to benefit a private company with which the Bureau employee was connected. (Comp., ¶ 14.) Isaac contacted the staff attorney for the Bureau who then forwarded the documents to the Ohio Ethics Commission. (Comp., ¶ 15.)

1. O.R.C. Section 4121.121(C) provides, *inter alia*, that "[t]he chief operating officer shall serve in the unclassified civil service of the state." Furthermore, the Plaintiff concedes that he held an unclassified position within the Bureau of Workers's Compensation. (Plaintiff's Memorandum Contra Motion to Dismiss, p. 2).

2. Based on the documents and business cards that contained his name, Isaac alleges that the briefcase belonged to Dale Hamilton, the Bureau's then-Deputy Administrator for Special Projects. (Comp., ¶¶ 12, 13.)

The Commission began an investigation. (Comp., ¶ 15.)

On November 7, 1997, Conrad approached Isaac and requested that Isaac resign. When Isaac resisted, Conrad terminated Isaac's employment with the Bureau. (Comp., ¶ 17.)

After inquiries by the press, Conrad directed James Samuel, a spokesperson for the Bureau, (and also a Defendant in this action) to issue a press release explaining that Isaac was terminated because of "poor performance" and "a failure to measure up to Conrad's standards." (Comp., ¶ 19; Motion to Dismiss, p. 3.) Conrad also informed the Ohio Hospital Association that Isaac's termination resulted from a discussion that occurred approximately thirty (30) days earlier. (Comp., ¶ 20.) Isaac claims that no such discussion ever occurred and that all of the reasons given to the press and the Ohio Hospital Association by Conrad and Samuel for his termination were patently false. (Comp., ¶ 21.) Isaac in fact alleged that, throughout his time in office, he was repeatedly commended for the performance of his duties as C.O.O. (Comp., ¶ 11 .)

On March 30, 1998, Isaac filed a Complaint in this Court alleging a violation of 42 U.S.C. § 1983. Jurisdiction of this Court is based upon 28 U.S.C. § 1331 and § 1343(a)(3). Isaac alleges that both Conrad and Samuel, in their official and individual capacities, violated his liberty interest by disparaging him in the media which caused Isaac to suffer legal injury including damage to his reputation, lost wages, emotional distress, and attorney fees. (Plaintiff's Memorandum Contra Motion to Dismiss, p. 2; Comp., ¶¶ 25–31.)

On June 8, 1998, Defendants Conrad and Samuel filed with this Court a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, Defendants assert that they are entitled to the defense of qualified immunity. (Motion to Dismiss, p. 1)

**II.**

Defendants move for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Sixth Circuit has adopted a two part test for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1248 (6th Cir.1996) *reh'g denied,* No. 95–5120, 1998 WL 117980 (6th Cir. Jan.15, 1998). A plaintiff defending against a Rule 12(b)(1) motion must show that "the complaint alleges a claim under federal law, and that the claim is 'substantial.'" *Id.* To make a decision as to whether the plaintiff in this case has met this showing, the Court is required to, as with a Rule 12(b)(6) motion, "consider the allegations of the complaint as true." *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir.1996) (citations omitted). In determining whether a claim is substantial, the Sixth Circuit requires a court to ask whether "prior decisions inescapably render [the claim] frivolous." *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank of Detroit,* 738 F.2d 163, 165 (6th Cir.1984) (internal quotations omitted). In essence, the plaintiff must be able to show any arguable basis in law to support the alleged claim in order to defeat a Rule 12(b)(1) motion.

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Mayer v. Mylod,* 988 F.2d 635, 637 (6th Cir.1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual

inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

### III.

Isaac brings this action alleging a' deprivation of a protected liberty interest[3] by Defendants[4] in violation of 42 U.S.C. § 1983. The Court thus analyzes his claim under the following well-settled framework.

### A. 42 U.S.C. § 1983

In analyzing claims brought under 42 U.S.C. § 1983, the Court begins with the language of the statute itself:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. The statute sets forth the basic principle that anyone acting under color of state law who deprives a person of a protected right, privilege, or immunity is liable to that person for damages.

"It is well established that a person's reputation and good name are among the liberty interests protected by the due process clause of the Fourteenth Amendment"

when these attributes are implicated by government action in the termination of a government employee. *Ferencz v. Hairston,* 119 F.3d 1244, 1250 (6th Cir., 1997) (quoting *Burkhart v. Randles,* 764 F.2d 1196, 1201 (6th Cir.1985)) (citations omitted).

To determine when an at-will employee's liberty interest is implicated in connection with a termination of employment, the Sixth Circuit has provided a five part test. *Ludwig v. Board of Trustees of Ferris State Univ.,* 123 F.3d 404 (6th Cir. 1997). "A liberty interest in one's reputation is implicated, therefore, only when five elements are satisfied." *Id.* at 410. First, the allegedly stigmatizing statements must be offered in conjunction with the employee's termination. Second, the statements must rise to a level of a moral stigma. Third, the statements must have been made public by the employer. Fourth, the plaintiff must claim the employer's statements were false. Finally, the fifth element requires that the employer have voluntarily disseminated the statements to the public.

The *Ludwig* Court concluded its five part test by determining that all five parts of the test must be satisfied before the employee is "entitled to notice and an opportunity to be heard through a name-clearing hearing . . . when plaintiff has made a request for such a hearing." *Id.* at 410 (citations omitted). The Court then said that the name-clearing hearing need only to provide the employee with the opportunity to clear one's name and was not required to comply with formal procedures in order to be valid. *Id.*

### B. Isaac's claim of a liberty interest deprivation

Here, Isaac claims that Defendants deprived him of a protected liberty interest

---

**3.** By Isaac's own admission, he asserts "one claim" which is a "denial of his right to *liberty* as guaranteed by the Fourteenth Amendment to the United States Constitution." (Memorandum Contra Motion to Dismiss, p. 1.) (emphasis added). No claim is made that Isaac was deprived of a property

interest in violation of the Fourteenth Amendment.

**4.** When used to refer to the facts and/or occurrences of this case, Defendant[s] refer[s] to James Conrad and/or James Samuel.

in his good reputation by publishing the statements that he was terminated because of "poor performance" and "a failure to live up to Conrad's standards." There is no dispute that the statements were made by Defendants who were, at the time, public officials. Isaac alleges a liberty interest deprivation because of damage to his reputation. "[I]njury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination." *Ludwig,* 123 F.3d at 410 (citing *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Chilingirian,* 882 F.2d at 205).

■ A review of the record before this Court makes it clear that Isaac meets only four of the five required elements of the *Ludwig* test. Under part one of the *Ludwig* test, the Court first addresses whether the allegedly stigmatizing statements were made in conjunction with Isaac's termination. Isaac has pleaded and Defendants do not dispute that the statements were indeed made in conjunction with Isaac's termination. For purposes of this Motion to Dismiss, the Court takes this allegation as true. Moreover, Defendants even admit that, in response to repeated inquires from the press as to why Isaac was terminated, they issued a press release that contained the allegedly stigmatizing statements. Thus, Isaac meets part one of the *Ludwig* test; the allegedly stigmatizing statements were offered in conjunction with the employee's termination.

As to whether the statements were made public by the employer, the Defendants admit that they issued a press release that contained the allegedly stigmatizing statements. Thus, Isaac meets part three of the *Ludwig* test; the statements were made public by the employer.

Plaintiff claims that the statements made by the employer were false, as required by part four of the *Ludwig,* analysis. (Comp., ¶ 21.) Taking the complaint as true, as required in the analysis of a

12(b)(1) and 12(b)(6) motion, Isaac meets part four of the *Ludwig* test.

The Court must also examine if the employer voluntarily disseminated the allegedly stigmatizing statements to the public. Again, taking the complaint as true for the purposes of this 12(b)(1) and 12(b)(6) motion, Defendants issued a press release that contained the allegedly stigmatizing statements. (Comp., ¶ 19.) Defendants have not pleaded that they were required to issue the press release. They concede that the release was provided to the press after repeated inquiries as to the reason for Isaac's termination. (Motion to Dismiss, p. 3.) Thus, Isaac meets part five of the *Ludwig* test; the allegedly stigmatizing statements were voluntarily made public by the employer.

Isaac, however, fails on the crucial second element of the *Ludwig* test. The allegedly damaging statements must rise to a level of a moral stigma. *Ludwig,* 123 F.3d at 410 (citing *Roth,* 408 U.S. at 573, 92 S.Ct. 2701). As a matter of law, an employee's liberty interest is not deprived if the employer merely states that the employee was terminated because of "improper or inadequate performance, incompetence, neglect of duty or malfeasance." *Ludwig,* 123 F.3d at 410. A statement "that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity" does not rise to the level necessary to constitute a deprivation of a liberty interest. *Joelson v. United States,* 86 F.3d 1413, 1420 (6th Cir.1996) (quoting *Gregory v. Hunt,* 24 F.3d 781, 788 (6th Cir.1994)). The Sixth Circuit has held that, in order to deprive an employee of a protected liberty interest, the employer

> must have made a statement in the course of the employee's discharge "that might seriously damage his standing and associations in his community" or that might impose "on him a stigma or other disability that [would] foreclose[ ] his freedom to take advantage of other em-

ployment opportunities." A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty.

*Ludwig,* 123 F.3d at 410 (citing *Roth,* 408 U.S. at 573, 92 S.Ct. 2701); *see also Pinelo v. Northern Kentucky Univ.,* No. 96–5765, 1998 WL 165136, at *4 (6th Cir. March 31, 1998) (unreported) (citing *Ludwig,* 123 F.3d at 410); *Gregory,* 24 F.3d at 789 (citations omitted) (noting that allegations must include serious character defects such as dishonesty or immorality to legally foreclose future employment opportunities).

Isaac alleges that the Defendants statements, that he was discharged because of "poor performance" and "a failure to measure up to Conrad's standards," have damaged his reputation and deprived him of his liberty interest. As held in *Ludwig,* 123 F.3d at 410, an employee has not been deprived of a liberty interest, however, when the employer has stated only that the employee was terminated because of "improper or inadequate performance, incompetence, neglect of duty or malfeasance."

The *Gregory* court dealt with a situation similar to Isaac's. Gregory was an at-will police officer at the University of Tennessee who was terminated for "inadequate work performance ... fail[ure] to follow clear instructions ... [and] for violating departmental policies and procedures." *Gregory,* 24 F.3d at 783, 788. The court held that while these statements may have been unfavorable to Gregory, they did not rise to a level of a liberty deprivation. *Id.* at 788; *see also Joelson,* 86 F.3d at 1420.

Isaac asks this Court to turn away from the wealth of binding precedent and to rely upon an unpublished decision of the Sixth Circuit in order to find a deprivation of his liberty interest, *Smith v. McReynolds,* No. 96–5699, 1997 WL 588858 (6th Cir. Sept.22, 1997) (unreported). Even if this Court were to rely upon *McReynolds,* a deprivation of liberty has not been established.

In *McReynolds,* the Tennessee Department of Commerce and Insurance publicly issued a report alleging that Smith failed to provide information to the State Attorney General's Office and failed to disclose an affidavit pertinent to a known, on-going investigation. Smith was terminated and had a "Code – 3" placed in his personnel file. On appeal of a denial of summary judgment, the Sixth Circuit held the case disclosed a genuine issue of material fact. Isaac urges this Court to read *McReynolds* as holding that whether the publicly disseminated report deprived Smith of a protected liberty interest is a question of fact. The genuine issue of fact to which the Sixth Circuit referred was whether a "Code – 3" prohibited Smith from being rehired by an agency of the state government. *Id.* at 6. The decision did not hold or imply that the reasons given for Smith's discharge implicated a liberty interest. Unlike *McReynolds,* the Complaint herein alleges no formal or informal governmental system by which other governmental employers were warned not to hire Isaac. Therefore, Isaac's reliance upon *McReynolds* is misplaced.

"A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty." *Roth,* 408 U.S. at 573, 92 S.Ct. 2701. Defendants' statements that Isaac was terminated for "poor performance" and "a failure to live up to Conrad's standards" do not, as a matter of law, rise to the level of a moral stigma. At most, Defendants' statements merely allege "improper or inadequate performance, incompetence, neglect of duty or malfeasance." *Ludwig,* 123 F.3d at 410. Thus, Isaac fails to meet an essential part of the *Ludwig* formulation.

## IV.

Having decided that Isaac has not, as a matter of law, pleaded legally sufficient facts to prove a deprivation of his liberty interest under 42 U.S.C. § 1983, the Court

need not address Defendants' arguments with respect to qualified immunity.

## V.

For the foregoing reasons, this Court **GRANTS** Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). (Doc. 8). The Clerk is directed to remove this matter from the Court's pending motions and cases list.

**IT IS SO ORDERED**