Michael D. DAVIS

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY and Cigna Corporation.

No. 3–88–0978.

United States District Court, M.D. Tennessee, Nashville Division.

Feb. 5, 1990.

R. Stephen Doughty, Nashville, Tenn., for plaintiff.

Gregory B. Tobin, Connecticut Gen. Life Ins. Co., Philadelphia, Pa., Thomas P. Kanaday, Jr., Nashville, Tenn., for defendants.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Pending before the Court are the defendants' motions for summary judgment. Also pending before the Court are the defendants' motion to refer this case to the Magistrate for simplification of issues, ruling on plaintiff's motion to amend, and for determination of pretrial dispositive issues. Finally, defendants move for a continuance of this matter pending the issuance of the Magistrate's Report and Recommendation.

## DISCUSSION

The Court hereby GRANTS in part and DENIES in part the defendants' motion to refer this case to the Magistrate pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Rules 302 and 303 L.R.M.P. for consideration of any pretrial matters arising in this case. The Court DENIES the defendants' motion to refer the case to the Magistrate with respect to the defendants' joint motion for summary judgment on the plaintiff's age discrimination, sex discrimination, and breach of contract claims because those issues will be resolved in this Memorandum. The Court GRANTS the defendants' motion to refer the case to the Magistrate with respect to defendant CIGNA's motion for summary judgment on the following grounds:

1. The agreement reached between the attorneys for plaintiff and defendant CIGNA Corporation to dismiss with prejudice defendant CIGNA Corporation from this action pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure should be enforced.

2. There is no evidence that defendant CIGNA Corporation was a party to any contract of employment with plaintiff and, thus, defendant CIGNA Corporation could not have breached any such contract as alleged by plaintiff.

3. There is no evidence that defendant CIGNA Corporation engaged in any acts which proximately caused the termination of plaintiff in alleged breach of plaintiff's alleged contract of employment.

4. There is no evidence that defendant CIGNA Corporation exercised any dominion or control over defendant Connecticut General Life Insurance Company at the time of the wrong or violations

of statutory duties alleged by plaintiff to have arisen by his termination.

The Magistrate will also consider any other pretrial issues arising in this case.

The Court GRANTS the defendants' motion for a continuance pending the issuance of the Magistrate's Report and Recommendation.

### A. *Standards for Summary Judgment*

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court explained the District Court's function in ruling upon a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

> As to the materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted....

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* 106 S.Ct. at 2510. (citations omitted).

It is likewise true that "[i]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. [citations omitted]. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute.'" *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962). As the Court of Appeals stated recently:

> Summary judgment may only be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. All facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

*Duchon v. Cajon Co.*, 791 F.2d 43 (6th Cir.1986). Under these holdings, three questions are to be considered upon a motion for summary judgment: (1) does the plaintiff present sufficient facts to establish all the elements of his claim; (2) are those facts sufficient to support a jury verdict or judgment; and (3) are there any material factual issues with respect to those facts.

Defendant Connecticut General Life Insurance Company is joined by defendant CIGNA Corporation in moving for summary judgment on all three of the plaintiff's claims on the following grounds:

1. Plaintiff's claim that he was terminated by defendant due to discrimination because of age cannot be maintained because plaintiff cannot establish an essential element of his case that he was replaced by a younger person.

2. Plaintiff's claim that he was terminated by defendant due to discrimination because of sex cannot be maintained as plaintiff cannot establish a *prima facie* case because there is no showing in this "reverse discrimination" case that defen-

dant is the unusual employer who discriminates against the majority.

3. Plaintiff's claim that he was terminated by defendant in breach of an alleged contract of employment cannot be maintained, even assuming *arguendo* there was a contract, as plaintiff's employment by defendant was for an indefinite term and, thus, terminable at the will of either plaintiff or defendant.

The Court will now consider each of these matters in turn.

### B. *Age Discrimination*

■ The plaintiff claims that he was discriminated against by the defendant because of his age in violation of § 4–21–401(a) of Tennessee's Human Rights Act. Section 4–21–401(a)(1) of the Tennessee Human Rights Act provides that the purpose and intent of that act is, *inter alia,* "to provide for the execution of the policies embodied in ... the Age Discrimination in Employment Act of 1967, as amended." In its determination on a claim under the Age Discrimination in Employment Act of 1967, as amended [ADEA], 29 U.S.C. § 621 *et seq.,* which, as here, arose out of corporate reorganization, the United States Court of Appeals for the Sixth Circuit held:

> To meet his ultimate burden of demonstrating that he was a victim of age discrimination, the plaintiff, *in addition to proving* that he fell within the protected class, that he was terminated and *that he was replaced by a younger individual,* must come forward with additional direct, circumstantial or statistical evidence that age was a determining factor in his termination. (emphasis added).

*Ridenour v. Lawson,* 791 F.2d 52, 57 (6th Cir.1986). See also *LaGrant v. Gulf & Western Manufacturing Co., Inc.,* 748 F.2d 1087 (6th Cir.1984).

In his complaint the plaintiff alleges the defendants terminated the plaintiff because of his age and replaced him with a younger employee. The undisputed facts, however, show that the plaintiff was replaced with Barbara Gay. The undisputed facts also show that Barbara Gay is older than the plaintiff. Because the plaintiff cannot demonstrate that the employee who replaced him was younger that he was, the plaintiff has not presented sufficient facts to establish all the elements of his claim. Therefore, the defendants' motion for summary judgment on the age discrimination claim is GRANTED.

### C. *Sex Discrimination*

■ Construing the defendants' motion for summary judgment in the light most favorable to the plaintiff, this Court hereby DENIES the defendants' motion for summary judgment. The plaintiff has alleged, and the facts, as construed, tend to show that the plaintiff was laid off by the defendant and was entitled to a preferential job search within the defendant's workforce. Yet, a female was allegedly chosen for the position in contravention of the preferential job search. Indeed, the plaintiff, although allegedly well-qualified, was not even notified or considered for the job opening.

In addition, the plaintiff alleges that the female was chosen over the plaintiff in large part due to the actions of the female's former supervisor who had a romantic relationship with the female.

Because there remains genuine issues of fact as to whether the plaintiff is the victim of sex discrimination, the defendant's motion for summary judgment on the sex discrimination claim is DENIED.

### D. *Breach of Contract*

The plaintiff claims that he was a party to an implied contract of employment, the terms of which were set forth in a handbook entitled "You and CIGNA." According to the plaintiff, this contract was breached by the defendants. Prior to considering the plaintiff's contract claims it is necessary to determine which state's substantive law governs the contract.

■ In cases over which a federal district court has jurisdiction on diversity grounds, that court must follow the substantive law of the state in which the court is located. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Included within this substantive law are the conflict of law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S.

487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) and *Agriculture Serv. Ass'n v. Ferry–Morse Seed Co.*, 551 F.2d 1057 (6th Cir.1977). In the present case the forum state is Tennessee.

■ In contract actions, Tennessee follows the traditional rule of *lex loci contractus*. This expressions means simply that the law of the place where the contract is made governs the construction and validity of the contract. *Solomon v. Flo-Warr Management, Inc.*, 777 S.W.2d 701 (Tenn.App.1989); *Ohio Casualty Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465 (Tenn.1973); *Deaton v. Vise*, 210 S.W.2d 665 (1948); and *First American National Bank v. Automobile Insurance Co.*, 252 F.2d 62 (6th Cir.1958). The plaintiff contends that the contract was made in Connecticut, while the defendants assert that the contract was made in Tennessee. The facts reveal that the contract was made in Tennessee.

■ The facts show that the plaintiff was an employee of the Life Insurance Company of North America in late 1987. The plaintiff was working on the marketing and sale of the group pension products of both the Life Insurance Company of North America and Connecticut General Life Insurance.[1] It was at this time that the plaintiff was informed that his employment would be with Connecticut General Life Insurance Company from then on. The plaintiff was transferred because Connecticut General Life Insurance Company took over the Life Insurance Company of North America's group pension product business. Although the decision to transfer the plaintiff was made unilaterally and independently by the defendants, without any input from the plaintiff, the transfer of the plaintiff was an "offer." The plaintiff "accepted" this offer by continuing to work for defendant Connecticut General Life Insurance Company. Because the plaintiff "accepted" in Tennessee, the contract is deemed to have been made in Tennessee.

■ Similarly, if the plaintiff is alleging that the employee handbook formed or modified a contract for employment, it is clear that the employment contract was still made in Tennessee. The employee handbook was mailed to the plaintiff from Connecticut and the plaintiff received the handbook in Tennessee. The handbook can be seen as an "offer," and the plaintiff's continued work for the defendants can be seen as an "acceptance". Because the plaintiff "accepted" in Tennessee, the contract is deemed to have been made in Tennessee.

Thus, Tennessee conflict of law rules dictate that Tennessee, and not Connecticut, law controls the plaintiff's employment relationship with defendants.

■ The plaintiff was originally hired by the Life Insurance Company of North America for employment for an indefinite term. Similarly, when the plaintiff was transferred from the Life Insurance Company of North America to Connecticut General Life Insurance Company the plaintiff remained an employee working for an indefinite term. In Tennessee "[t]he law is well established ... that a contract for employment for an *indefinite* term is a contract at will and can be terminated by either part[y] at any time without cause." *Graves v. Anchor Wire Corp.*, 692 S.W.2d 420, 422 (Tenn.App.1985) (emphasis in the original). However, the non-existence of a definite term of employment does not preclude the existence of other terms to the contract. *Williams v. Maremont Corp.*, 776 S.W.2d 78 (Tenn.App.1988). Indeed, the non-existence of a definite term of employment at the outset of employment does not preclude the modification of the employment contract to provide for a definite term or to provide for other terms originally not contained in the employment contract.

■ Tennessee courts have recognized that an employee handbook may, under certain circumstances, become part of the contract of employment between the employee and the employer. *Hamby v. Genesco,*

---

**1.** Both the Life Insurance Company of North America and Connecticut General Life Insurance Company are subsidiaries of the CIGNA Corporation.

*Inc.*, 627 S.W.2d 373 (Tenn.App.1981); *Williams v. Maremont Corp.*, 776 S.W.2d 78 (Tenn.App.1988). However, the determination of whether an employee handbook is deemed to be part of the employment contract depends upon the specific language of the handbook.

In *Hamby v. Genesco, Inc.*, the plaintiff employees of the defendant employer were suing claiming that they were entitled to compensation because the defendant had not complied with certain procedures as set forth in the employee handbook. The Tennessee Court of Appeals first noted that:

> The employer-employee relationship is the product of an agreement or a series of agreements between the employer and the employee, including, but not limited to, the nature of the work to be performed, the duration of the employment and the terms and conditions of the employment.

627 S.W.2d at 375. The court then stated that "the handbook was a part of the contract of employment between plaintiff's and [the defendant]." The court focused on two specific provisions of the handbook. The first provision was on the first page of the handbook and contained the following language:

> The policies contained in this booklet are the result of over 52 years of thoughtful planning, with the management of this business working individually in harmony and understanding with the people in the General Shoe Company organization. We invite suggestions from employees on changes that might be adopted and included in the handbook.
> So long as these relationships continue, these shall be
> The Guaranteed Policies, Practices and Procedures of
> GENERAL SHOE
> COMPANY.

Next, the court focused on the forward of the handbook. The first paragraph of the forward is as follows:

> This handbook is written so that each employee may know and get equal benefits from these policies that apply to all regardless of age, race, color, religion, sex, handicap, national origin, or status as a veteran.

The Tennessee Court of Appeals has interpreted *Hamby v. Genesco* to mean that an employment handbook can only become a part of the employment handbook when "the specific language of the handbook [shows] contractual intent." *Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn.App. 1988). *See e.g., Smith v. Dixie Cement Company, Inc.*, 1989 WL 146739 (Tenn. App.1989). Similarly, the United States District Court for the Eastern District of Tennessee has found that under Tennessee law an employee handbook must provide certain guarantees to the employees before the handbook will be deemed to be a part of the employment contract. *MacDougal v. Sears, Roebuck & Co.*, 624 F.Supp. 756, 759 (E.D.Tenn.1985) ("Only where the language is specific in stating that the employment manual provides certain guaranteed policies or practices will the employment manual be deemed part of the employment contract."). Thus, in order for an employee handbook to be treated as part of the employment contract under Tennessee law the handbook must contain specific language giving rise to certain guaranteed policies or practices.

The defendants argue that this Court does not even have to go so far as to examine the handbook for explicit guarantees because the employee handbook "You and CIGNA" contained language expressly stating that the handbook was not part of the employment contract and therefore that the handbook can not be deemed to be part of the employment contract. Specifically the handbook contains the following language:

> This handbook is for information only. It is not an employment contract. It is a statement of current policies, practices, and procedures. CIGNA reserves the right to change any or all such policies, practices and procedures in whole or in part at any time, with or without notice to you.
> Nothing in this handbook and nothing otherwise communicated to you about

your rights as an employee, regardless of the source, limit in any way either your right to resign from your employment with CIGNA at any time for any reason or your employer's right to terminate your employment at any time for any reason.

This language does not automatically prevent the handbook from becoming part of the employment contract, rather, this language must be examined in context with the handbook as a whole. These two paragraphs are located on the last page of a 52 page handbook. There is nothing to distinguish these two paragraphs from the rest of the text or highlight these paragraphs as being particularly important. The paragraphs are not preceded by a heading. In fact, the placement of these paragraphs on the very last page of the handbook and the fact that these paragraphs appear to be printed in a smaller typeface than the rest of the handbook make them inconspicuous and diminish their importance.

Tennessee recognizes that some language within contracts will not be binding if that language is hidden, not pointed out, and that a person of ordinary intelligence and experience would not expect to find such a provision within the contract. *Parton v. Pirtle Oldsmobile–Cadillac–Isuzu, Inc.*, 730 S.W.2d 634 (Tenn.App.1987). *See also, Board of Directors v. Southwestern Petro.*, 757 S.W.2d 669 (Tenn.App.1988). In this case the language fails to meet the *Parton v. Pirtle Oldsmobile–Cadillac–Isuzu, Inc.* standard and thus can not be used to automatically prevent the handbook from becoming part of the employment contract.

After rejecting the defendants' argument that the exculpatory language in the handbook prevents it from becoming a part of the employment contract, it is necessary to examine the handbook for specific language which gives rise to certain guaranteed policies or practices.

The plaintiff asserts essentially that several provisions of the employee handbook read in conjunction transform his employment from that of an indefinite term employee who may be fired at will to a definite term employee who may be fired only at the end of the term or for cause during the course of the term. These provisions, the plaintiff argues, contractually gave him employment with the defendants for "a periodic term with each period of employment ending at the time of performance evaluations and renewal of employment being contingent on the performance review and, if performance was unsatisfactory, completion of a probationary period." (Plaintiff's Complaint at 2). The plaintiff relies on portions of the employee handbook which refer to employer expectations, employee performance, and salary adjustment to justify his allegation that his employment was for a periodic term[2]. However, because Tennessee still clings to the "employee-at-will" rule, there is a presumption that an employee is an employee at will. This presumption must be overcome by specific language guaranteeing a definite term of employment.

In *Whittaker v. Care–More, Inc.*, 621 S.W.2d 395 (Tenn.App.1981), discharged employees sued their former employers on the ground that they had been discharged without good cause in breach of implied contracts for indefinite terms of employment. Although the employees had signed an employment application that made clear that their employment could be terminated at will by either the employee or the employer the employees argued that a subsequently issued employee handbook modified the employment contract. The employee handbook contained the following language:

An employee may reasonably expect uninterrupted employment year in and year out. Any employee doing his work in a satisfactory manner and working for the

---

**2.** The plaintiff relies on the following provisions taken from the employee handbook: 1) "you and your supervisor share responsibility for discussing what you will be expected to achieve during the following year ..."; 2) "once a year there should be a formal written appraisal of your performance"; 3) "The timing of your annual appraisal will be based on your salary grade."

good of the organization has little to fear about job security. 621 S.W.2d at 397. The Tennessee Court of Appeals held that this provision did not modify the employment contract. The court stated: "We cannot agree that this statement entitled the plaintiffs to a specific term of employment. There are no guarantees or binding commitments contained therein. When read in conjunction with the express language of the employment application the quoted language offers no solace to the plaintiff." *Id.*

 The language of the handbook "You and CIGNA" is comparable to the language of the handbook at issue in *Whittaker v. Care–More, Inc.* This Court finds that the language in the CIGNA employee handbook does not provide specific enough guarantees to imply a specific term of employment into the employment contract [3]. Thus, consistent with the Tennessee "employee-at-will" rule, the defendants were free to fire the plaintiff at will for good cause or no cause.

 This determination does not end the Court's inquiry into the defendants' motion for summary judgment on the plaintiff's breach of contract claim. In addition to alleging that the defendants breached their contract with the plaintiff by firing the plaintiff, the plaintiff also alleges that the defendants breached their contract with the plaintiff by not conducting an "internal job search." The plaintiff further alleges that if the defendants did in fact conduct a job search it was merely a sham. Because the defendants do not address this issue in their motion for summary judgment, and construing the facts in the light most favorable to the non-moving party, the plaintiff, this Court must deny the defendant's motion for summary judgment on the plaintiff's breach of contract claim at least insofar as the plaintiff asserts that the defendant breached its contract with the plaintiff by failing to conduct an internal job search.

### SUMMARY

The defendants' motion to refer the case to the Magistrate for a determination of all pretrial issues is DENIED as to the issues resolved in this Memorandum and GRANTED as to all remaining issues and any other pretrial matters yet to be filed. Included among the issues yet to be resolved are the plaintiff's motion to amend and defendant CIGNA's motion for summary judgment.

The defendants' motion for a continuance of this matter pending the issuance of the Magistrate's Report and Recommendation is GRANTED.

The joint motion of the defendants for summary judgment on the plaintiff's claims is DENIED as to the sex discrimination claim; GRANTED as to the age discrimination claim; and DENIED as to the breach of contract claim insofar as the plaintiff is claiming that the defendant breached its contract with the plaintiff by failing to conduct an internal job search.

An Order will be entered simultaneously with this Memorandum.

---

**3.** The plaintiff also alleges that the employee handbook contractually bound the defendants to "treat their employees ... fairly and equitably" and that the handbook contractually bound the defendants to the "highest ethical and legal standards in the conduct of their business as they carry out their obligations to their employees." (Plaintiff's Complaint at 2). The plaintiff evidently relies on language in the handbook like "CIGNA treats its employees fairly and equitably" to justify this assertion. There are no guarantees or binding commitments in the language cited by the plaintiff. Because this language is not specific enough to give rise to a guarantee this language is thus insufficient to create a binding contractual term.