# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON
_____

|  |  |  |
|---|---|---|
| **JERRY WILLIAMS**, | ) | Shelby County Circuit Court, |
|  | ) | No. 52045 T.D.T |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9608-CV-00190 |
|  | ) |  |
| **MEMPHIS HOUSING AUTHORITY,** | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |
|  | ) |  |

FILED

June 2, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

_____

|  |  |  |
|---|---|---|
| **MABLE MONDAY**, | ) | Shelby County Circuit Court |
|  | ) | No. 51932 T.D. |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9610-CV-00231 |
|  | ) |  |
| **MEMPHIS HOUSING AUTHORITY**, | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable Wyeth Chandler, Judge**

**Gregory L. Perry**
Attorney for Defendant/Appellant.

**Alan Bryant Chambers**,
**Jeff A. Crow, Jr.**
CHAMBERS, CROW, DURHAM & HOLTON, LAWYERS, Memphis, Tennessee
Attorney for Plaintiffs/Appellees.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

Defendant Memphis Housing Authority (MHA) appeals several orders entered by the trial court in favor of two of MHA's former employees, Plaintiffs/Appellees Jerry D. Williams and Mable Monday (collectively, the Employees). In separate actions filed below, the Employees sued MHA for breach of employment contract. In both cases, the trial court entered orders granting the Employees' motions for summary judgment based on the court's conclusion that MHA's Manual of Operations constituted part of the employment contract between the parties and, further, that MHA breached this contract by terminating the Employees without just cause. Amending the pleadings to conform to the proof in the records, the trial court's foregoing orders also granted summary judgment to the Employees on their claims that, in terminating the Employees, MHA violated their rights to substantive and procedural due process.[1] After conducting a subsequent hearing on the issue of remedies, the trial court entered final orders granting the Employees back pay and reinstatement to their former positions with MHA.[2] Upon MHA's motion, this court consolidated MHA's appeals of the trial court's judgments in favor of Williams and Monday because the appeals involve common questions of law and fact.[3]

On appeal from the trial court's final judgments, MHA contends that the trial court erred in (1) permitting the Employees to amend their complaints to assert claims for substantive and procedural due process violations; (2) granting the Employees' motions for summary judgment; (3) awarding the Employees back pay and reinstatement; and (4) denying MHA's motions for leave to renew its motions for summary judgment. We conclude that a resolution of the second issue is dispositive of this appeal, and we reverse the trial court's judgments.

For purposes of the Employees' summary judgment motions, the parties stipulated to the following facts. MHA hired Monday for the position of Executive Secretary in September 1989. Williams was hired as MHA's Director of Security in April 1991. MHA's operation is

---

[1] *See* U.S. Const. amends. V, XIV; 42 U.S.C. § 1983 (1988); *see also* Tenn. Const. art. I, § 8. The Employees' initial complaints did not include these due process claims, but the Employees later sought to add these claims by filing motions to amend their complaints. The trial court's orders effectively granted the Employees' motions to amend.

[2] The trial court specified that Williams' reinstatement was contingent upon Williams' former position becoming available.

[3] *See* T.R.A.P. 16(b).

partially governed by federal law and by federal rules and regulations implemented by the United States Department of Housing and Urban Development (HUD).  Between November 1991 and February 1992, HUD's district area office in Nashville conducted a Comprehensive Coordinated Management Review of MHA.  As a result of this review, HUD issued a report in March 1992 which concluded that Williams and Monday had been improperly hired in that their employment applications were not submitted within the advertised time frames.  Specifically, Williams submitted his application prior to the date MHA posted its solicitation for the position of Director of Security, while Monday submitted her application after the advertised closing date for the position of Executive Secretary.  Based on these procedural violations in MHA's hiring of Williams and Monday, HUD instructed MHA to terminate the Employees.  As instructed, MHA terminated the Employees in April 1992.  In accordance with the grievance procedures outlined in MHA's Manual of Operations, both Employees filed grievances, which ultimately were denied by MHA's Board of Commissioners.

The Employees subsequently filed complaints against MHA for breach of employment contract.  In their complaints, the Employees alleged that MHA's Manual of Operations constituted an employment contract between the parties and that MHA had breached this employment contract by terminating the Employees without just cause.  Based on this argument, the Employees moved for summary judgment on their breach of employment contract claims, as well as their claims that they had been deprived of property rights without due process of law.  After reviewing the Manual of Operations and the stipulated facts, the trial court agreed with the Employees' contention and, accordingly, entered summary judgment in favor of the Employees. The dispositive issue in this appeal, therefore, is whether MHA's Manual of Operations constituted an employment agreement which contractually limited MHA's right to terminate the Employees.

Because Tennessee adheres to the "employee-at-will" rule, a presumption arises in this state that an employee is an employee at will.  *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990).  Under this well-established rule, a contract for employment for an indefinite term is considered a contract at will which can be terminated by an employer (or an employee) at any time without cause.  *Bringle v. Methodist Hosp.*, 701 S.W.2d 622, 625 (Tenn. App. 1985); *accord Graves v. Anchor Wire Corp.*, 692 S.W.2d 420, 422 (Tenn. App. 1985);

***Whittaker v. Care-More, Inc.***, 621 S.W.2d 395, 396 (Tenn. App. 1981).

In recent years, the courts of this state have recognized, at least in theory, that an exception to the at-will rule may arise where an employer promulgates an employee handbook which confers certain benefits on employees[4] or which limits the employer's right to terminate employees.[5] In order to be considered part of the employment contract, however, the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions. ***Smith v. Morris***, 778 S.W.2d 857, 858 (Tenn. App. 1988). Unless the employee handbook contains specific guarantees or binding commitments, the handbook will not constitute a contract. ***Whittaker v. Care-More***, 621 S.W.2d at 397. As stated by one court, "the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material, such as an employment application." ***Claiborne v. Frito-Lay, Inc.***, 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989). Our research has revealed few instances in which appellate courts of this state have concluded that the language of an employee handbook was binding on an employer. ***See Williams v. Maremont Corp.***, 776 S.W.2d 78 (Tenn. App. 1988) (holding that terms of employee handbook were binding on employer where handbook provided that employees would be recalled in order of seniority); ***Hamby v. Genesco, Inc.***, 627 S.W.2d 373 (Tenn. App. 1981) (holding that employee handbook's "rollback" provision was binding on employer where handbook provided that, for so long as employment relationship continued, handbook contained guaranteed policies, practices, and procedures of employer); ***see also Hooks v. Gibson***, 842 S.W.2d 625 (Tenn. App. 1992) (concluding that employee handbook became part of employment contract where handbook was promulgated pursuant to agreement between employer and state and employees were third-party beneficiaries of such agreement).

---

[4]***See Smith v. Morris***, 778 S.W.2d 857 (Tenn. App. 1988) (compensation for accumulated unused sick leave); ***Williams v. Maremont Corp.***, 776 S.W.2d 78 (Tenn. App. 1988) (recall provision); ***Hamby v. Genesco, Inc.***, 627 S.W.2d 373 (Tenn. App. 1981) (rollback provision); ***see also Claiborne v. Frito-Lay, Inc.***, 718 F. Supp. 1319 (E.D. Tenn. 1989) (seniority provision); ***MacDougal v. Sears, Roebuck & Co.***, 624 F. Supp. 756 (E.D. Tenn. 1985) (service allowance).

[5]***See Bringle v. Methodist Hosp.***, 701 S.W.2d 622 (Tenn. App. 1985); ***Graves v. Anchor Wire Corp.***, 692 S.W.2d 420 (Tenn. App. 1985); ***Whittaker v. Care-More, Inc.***, 621 S.W.2d 395 (Tenn. App. 1981); ***see also Gregory v. Hunt***, 24 F.3d 781 (6th Cir. 1994); ***Davis v. Connecticut Gen. Life Ins. Co.***, 743 F. Supp. 1273 (M.D. Tenn. 1990).

The employee handbook at issue in this case is MHA's Manual of Operations. The determination of whether the Manual of Operations constitutes part of MHA's employment contract with Williams and Monday depends upon the specific language used in the Manual. *See Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. at 1279; *see also Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994); *MacDougal v. Sears, Roebuck & Co.*, 624 F. Supp. 756, 759 (E.D. Tenn. 1985). Accordingly, in order to make this determination, we have examined the Manual's specific provisions. The Manual's forward states:

> This is the official Manual of Operations for the Memphis Housing Authority. Its purpose is to arrange for ready reference a review of the policies, relationships, and procedures of [MHA]. It is intended primarily as a guide for employees in the discharge of their duties.

Article IV of the Manual, entitled AMENDMENTS, provides that:

> The Manual of Operations and the By-Laws of [MHA] may be amended by any special or regular meeting of the Board of Commissioners by a simple majority of said Commissioners, there being a quorum present.

Section 208 of the Manual, entitled EMPLOYMENT AND PERSONNEL REGULATIONS, provides that:

> All employment and personnel procedures shall be regulated by the provisions hereinafter provided in this section and elsewhere in this Manual.

In this section, the Manual lists four reasons for termination of services: resignation, dismissal for just cause, retirement, and reduction in force. The Manual also lists causes for which an employee may be suspended, demoted, or terminated, and it divides the causes into two categories, major infractions and other infractions. After listing examples of infractions, the Manual states:

> None of the aforementioned Major or Other Infractions will be deemed to prevent the dismissal, demotion, suspension, or disciplinary action of an employee for just cause. JUST CAUSE shall exist when [MHA] has a reasonable basis for the action taken even though such cause is not contained in those mentioned above.

Finally, Section 401 of the Manual, entitled <u>PURPOSE</u>, provides that:

> This Manual of Operations contemplates that every fucntion [sic] of [MHA] shall be carried out by its members and employees strictly in accordance with policies and procedures adopted by [MHA], and incorporated in the Manual.

After carefully reviewing the specific language contained in MHA's Manual of Operations, we conclude that the Manual's provisions are insufficient to overcome the presumption that Williams and Monday were at-will employees. The Employees contend that the Manual contains sufficient guarantees to be binding upon MHA because the Manual specifically contemplates that all MHA functions "shall be carried out by its members and employees strictly in accordance with" the Manual's policies and procedures and, further, because the Manual states that "[a]ll employment and personnel procedures shall be regulated by" the Manual's provisions. If this language evidences an intent on the part of MHA to be bound by the Manual's provisions, however, such intent is contradicted by the existence of a provision in the Manual giving MHA's Board of Commissioners the authority to amend the Manual at any special or regular Board meeting. "Any language that preserves a unilateral right on the part of the employer to alter or modify the contents of [a] handbook" generally precludes the handbook from being considered part of the employment contract. *Claiborne v. Frito-Lay, Inc.*, 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989); *see, e.g.*, *Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn. App. 1988) (handbook's language clearly showed "that modifications were anticipated"); *Bringle v. Methodist Hosp.*, 701 S.W.2d 622, 624 (Tenn. App. 1985) (handbook reserved to employer "right to change and abolish policies, procedures, rules and regulations"); *Gregory v. Hunt*, 24 F.3d 781, 786 (6th Cir. 1994) (handbook provided that policies were "subject to change by management, unilaterally and without notice"); *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1279 (M.D. Tenn. 1990) (handbook reserved to employer "right to change any or all such policies, practices and procedures in whole or in part at any time, with or without notice"). Such language instead indicates "that the handbook simply constitute[s] a set of guidelines or a source of information for an employee." *Claiborne v. Frito-Lay*, 718 F. Supp. at 1321. In the case of MHA's Manual of Operations, this conclusion is further supported by language indicating that the Manual's purpose "is intended primarily as a guide for

employees in the discharge of their duties."

Even if the Manual of Operations' language demonstrates an intent on the part of MHA to be bound by the Manual, we find nothing in the Manual's provisions which would alter the Employees' status as at-will employees. First, we note that the Manual did not entitle the Employees to a specific term of employment because the Manual's provisions gave the Employees no assurances of employment for any definite time. *See Graves v. Anchor Wire Corp.*, 692 S.W.2d 420, 421 (Tenn. App. 1985); *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395, 397 (Tenn. App. 1981); *accord Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990) (concluding that, because Tennessee still clings to "employee-at-will" rule, presumption that employee is at will must be overcome by specific language guaranteeing definite term of employment). Moreover, contrary to the Employees' argument, the terms of the Manual did not limit MHA's right to terminate the Employees by requiring that any termination of services be for one of the enumerated reasons, such as just cause. Although the Manual listed only four reasons for termination, including resignation, dismissal for just cause, retirement, and reduction in force, this list did not purport to be exclusive. Indeed, the Manual's inclusion of reduction in force to this list contemplates that certain business exigencies may arise which necessitate dismissing employees for reasons other than just cause. In this case, therefore, we can find no language that unequivocally overcomes the presumption that Williams and Monday were at-will employees. *See Gregory v. Hunt*, 24 F.3d at 787; *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. at 1280.

Based on the foregoing analysis, we conclude that the trial court erred in ruling that MHA's Manual of Operations constituted an employment contract which limited MHA's right to terminate the Employees; therefore, we reverse the trial court's orders entering summary judgment in favor of the Employees on their claims for breach of employment contract. This holding leads us to the related conclusion that MHA's Manual did not grant the Employees any protectible property interest in continued employment with MHA. *See Gregory v. Hunt*, 24 F.3d at 787. Accordingly, we also reverse that portion of the trial court's orders entering summary judgment in favor of the Employees on their due process claims. Finally, our disposition of the Employees' claims requires that the trial court's final orders granting back pay and reinstatement be reversed.

The trial court's judgments are reversed and these causes remanded for further proceedings. Costs of this appeal are taxed one-half to Williams and one-half to Monday, for which execution may issue if necessary.

 

_____

FARMER, J.

_____

HIGHERS, J. (Concurs)

_____

LILLARD, J. (Concurs)