**IN THE COURT OF APPEALS OF TENNESSEE**
**WESTERN SECTION AT JACKSON**

FILED

June 17, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

MARLES FLOWERS,                )
                               )
        Plaintiff/Appellee,    )  Shelby Circuit No. 51934 T.D.
                               )
VS.                            )  Appeal No. 02A01-9610-CV-00240
                               )
MEMPHIS HOUSING AUTHORITY,     )
                               )
        Defendant/Appellant.   )


APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE WYETH CHANDLER, JUDGE


**GREGORY L. PERRY**
Memphis, Tennessee
Attorney for Appellant


**ALAN BRYANT CHAMBERS**
**JEFF A. CROW, JR.**
**CHAMBERS, CROW, DURHAM & HOLTON**
Memphis, Tennessee
Attorneys for Appellee


**REVERSED AND REMANDED**


                              **ALAN E. HIGHERS, J.**


**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

In this action for breach of employment contract, Defendant Memphis Housing Authority (MHA) appeals two orders of the trial court entered in favor of MHA's former employee, Plaintiff/Appellee Marles Flowers. In its first order, the trial court granted Flowers' motion for summary judgment based on the court's conclusion that MHA's Manual of Operations constituted part of the employment contract between the parties and, further, that MHA breached this contract by terminating Flowers without just cause. After amending the pleadings to conform to the proof in the record, the trial court's initial order also granted summary judgment to Flowers on his claim that, in terminating Flowers, MHA deprived him of a protectible property interest in violation of his constitutional right to due process. The trial court later entered a final order granting Flowers the remedies of back pay for a period of three years, as well as reinstatement to his former position with MHA. For the reasons hereinafter stated, we reverse the trial court's orders and remand for further proceedings.

For purposes of Flowers' motion for summary judgment, the parties stipulated to the following facts. MHA hired Flowers for a management position in September 1990. MHA's operation is partially governed by federal law and by federal rules and regulations implemented by the United States Department of Housing and Urban Development (HUD). Between November 1991 and February 1992, HUD's district area office in Nashville conducted a Comprehensive Coordinated Management Review of MHA. As a result of this review, HUD issued a report in March 1992 which concluded that Flowers had been improperly hired. Based on this finding, HUD instructed MHA to terminate Flowers' employment. As instructed, MHA terminated Flowers in April 1992.

During Flowers' employment with MHA, MHA had in effect an employee handbook known as its "Manual of Operations." As pertinent to this appeal, the Manual's forward states:

> This is the official Manual of Operations for the Memphis Housing Authority. Its purpose is to arrange for ready reference a review of the policies, relationships, and procedures of [MHA]. It is intended primarily as a guide for employees in the discharge of their duties.

Article IV of the Manual, entitled AMENDMENTS, provides that:

2

The Manual of Operations and the By-Laws of [MHA] may be amended by any special or regular meeting of the Board of Commissioners by a simple majority of said Commissioners, there being a quorum present.

Section 208 of the Manual, entitled EMPLOYMENT AND PERSONNEL REGULATIONS, provides that:

All employment and personnel procedures shall be regulated by the provisions hereinafter provided in this section and elsewhere in this Manual.

In this section, the Manual lists four reasons for termination of services: resignation, dismissal for just cause, retirement, and reduction in force. The Manual also lists causes for which an employee may be suspended, demoted, or terminated, and it divides the causes into two categories, major infractions and other infractions. After listing examples of infractions, the Manual states:

None of the aforementioned Major or Other Infractions will be deemed to prevent the dismissal, demotion, suspension, or disciplinary action of an employee for just cause. JUST CAUSE shall exist when [MHA] has a reasonable basis for the action taken even though such cause is not contained in those mentioned above.

Section 304 of the Manual, entitled THE PERSONNEL GRIEVANCE PROCEDURE, sets forth a procedure whereby employees may file "grievances concerned with the interpretation and/or application of [the Manual], its directives, procedures, working conditions and discipline." Finally, Section 401 of the Manual, entitled PURPOSE, provides that:

This Manual of Operations contemplates that every [function] of [MHA] shall be carried out by its members and employees strictly in accordance with policies and procedures adopted by [MHA], and incorporated in the Manual.

After being terminated by MHA, Flowers did not pursue the personnel grievance procedure outlined in MHA's Manual of Operations; however, the parties stipulated that Flowers would have been terminated even if he had completed the grievance process and that it would have been futile for him to do so.

Flowers subsequently filed a complaint against MHA for breach of employment contract. In his complaint, Flowers alleged that MHA's Manual of Operations constituted

3

an employment contract between the parties and that MHA had breached this employment contract by terminating Flowers without just cause. Flowers later sought to amend his complaint to state a cause of action for substantive and procedural due process violations.[1] Both parties filed motions for summary judgment. The trial court granted Flowers' motion as to both claims, and this appeal followed.

On appeal, MHA contends that the trial court erred in (1) granting Flowers' motion to amend his complaint; (2) granting Flowers' motion for summary judgment; (3) awarding Flowers back pay and reinstatement; and (4) denying MHA's motion for leave to renew its motion for summary judgment. We conclude that the outcome of this appeal is controlled by this court's recent decision in Williams v. Memphis Housing Authority, No. 02A01-9608-CV-00190, slip op. at 2-6 (Tenn. App. June 2, 1997), and, thus, we reverse the trial court's judgment based on the reasoning set forth in that case.

In Williams v. MHA, two MHA employees were terminated under substantially similar circumstances under which Flowers was terminated. As in this appeal, in Williams v. MHA, the dispositive question was whether MHA's Manual of Operations constituted an employment agreement which contractually limited MHA's right to terminate the employees. Answering this question in the negative, we reasoned:

> Because Tennessee adheres to the "employee-at-will" rule, a presumption arises in this state that an employee is an employee at will. Davis v. Connecticut Gen. Life Ins. Co., 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990). Under this well-established rule, a contract for employment for an indefinite term is considered a contract at will which can be terminated by an employer (or an employee) at any time without cause. Bringle v. Methodist Hosp., 701 S.W.2d 622, 625 (Tenn. App. 1985); accord Graves v. Anchor Wire Corp., 692 S.W.2d 420, 422 (Tenn. App. 1985); Whittaker v.Care-More, Inc., 621 S.W.2d 395, 396 (Tenn. App. 1981).
>
> In recent years, the courts of this state have recognized, at least in theory, that an exception to the at-will rule may arise where an employer promulgates an employee handbook which confers certain benefits on employees or which limits the employer's right to terminate employees. In order to be considered part of the employment contract, however, the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions.

---

[1]See U.S. Const. amends. V, XIV; 42 U.S.C. § 1983 (1988); see also Tenn. Const. art. I, § 8.

4

Smith v. Morris, 778 S.W.2d 857, 858 (Tenn. App. 1988). Unless the employee handbook contains specific guarantees or binding commitments, the handbook will not constitute a contract. Whittaker v. Care-More, 621 S.W.2d at 397. As stated by one court, "the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material, such as an employment application." Claiborne v. Frito-Lay, Inc., 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989). Our research has revealed few instances in which appellate courts of this state have concluded that the language of an employee handbook was binding on an employer. See Williams v. Maremont Corp., 776 S.W.2d 78 (Tenn. App. 1988) (holding that terms of employee handbook were binding on employer where handbook provided that employees would be recalled in order of seniority); Hamby v. Genesco, Inc., 627 S.W.2d 373 (Tenn. App. 1981) (holding that employee handbook's "rollback" provision was binding on employer where handbook provided that, for so long as employment relationship continued, handbook contained guaranteed policies, practices, and procedures of employer); see also Hooks v. Gibson, 842 S.W.2d 625 (Tenn. App. 1992) (concluding that employee handbook became part of employment contract where handbook was promulgated pursuant to agreement between employer and state and employees were third-party beneficiaries of such agreement).

. . . .

After carefully reviewing the specific language contained in MHA's Manual of Operations, we conclude that the Manual's provisions are insufficient to overcome the presumption that [the Employees] were at-will employees. The Employees contend that the Manual contains sufficient guarantees to be binding upon MHA because the Manual specifically contemplates that all MHA functions "shall be carried out by its members and employees strictly in accordance with" the Manual's policies and procedures and, further, because the Manual states that "[a]ll employment and personnel procedures shall be regulated by" the Manual's provisions. If this language evidences an intent on the part of MHA to be bound by the Manual's provisions, however, such intent is contradicted by the existence of a provision in the Manual giving MHA's Board of Commissioners the authority to amend the Manual at any special or regular Board meeting. "Any language that preserves a unilateral right on the part of the employer to alter or modify the contents of [a] handbook" generally precludes the handbook from being considered part of the employment contract. Claiborne v. Frito-Lay, Inc., 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989); see, e.g., Smith v. Morris, 778 S.W.2d 857, 858 (Tenn. App. 1988) (handbook's language clearly showed "that modifications were anticipated"); Bringle v. Methodist Hosp., 701 S.W.2d 622, 624 (Tenn. App. 1985) (handbook reserved to employer "right to change and abolish policies, procedures, rules and regulations"); Gregory v. Hunt, 24 F.3d 781, 786 (6th Cir. 1994) (handbook provided that policies were "subject to change by management, unilaterally and without notice"); Davis v. Connecticut Gen. Life Ins. Co., 743 F. Supp. 1273, 1279 (M.D. Tenn. 1990) (handbook reserved to employer "right to change

5

any or all such policies, practices and procedures in whole or in part at any time, with or without notice"). Such language instead indicates "that the handbook simply constitute[s] a set of guidelines or a source of information for an employee." Claiborne v. Frito-Lay, 718 F. Supp. at 1321. In the case of MHA's Manual of Operations, this conclusion is further supported by language indicating that the Manual's purpose "is intended primarily as a guide for employees in the discharge of their duties."

Even if the Manual of Operations' language demonstrates an intent on the part of MHA to be bound by the Manual, we find nothing in the Manual's provisions which would alter the Employees' status as at-will employees. First, we note that the Manual did not entitle the Employees to a specific term of employment because the Manual's provisions gave the Employees no assurances of employment for any definite time. See Graves v. Anchor Wire Corp., 692 S.W.2d 420, 421 (Tenn. App. 1985); Whittaker v. Care-More, Inc., 621 S.W.2d 395, 397 (Tenn. App. 1981); accord Davis v. Connecticut Gen. Life Ins. Co., 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990) (concluding that, because Tennessee still clings to "employee-at-will" rule, presumption that employee is at will must be overcome by specific language guaranteeing definite term of employment). Moreover, contrary to the Employees' argument, the terms of the Manual did not limit MHA's right to terminate the Employees by requiring that any termination of services be for one of the enumerated reasons, such as just cause. Although the Manual listed only four reasons for termination, including resignation, dismissal for just cause, retirement, and reduction in force, this list did not purport to be exclusive. Indeed, the Manual's inclusion of reduction in force to this list contemplates that certain business exigencies may arise which necessitate dismissing employees for reasons other than just cause. In this case, therefore, we can find no language that unequivocally overcomes the presumption that [the Employees] were at-will employees. See Gregory v. Hunt, 24 F.3d at 787; Davis v. Connecticut Gen. Life Ins. Co., 743 F. Supp. at 1280.

Williams v. MHA, slip op. at 2-6 (footnotes omitted).

In accordance with Williams v. MHA, we conclude that the trial court erred in ruling (1) that MHA's Manual of Operations constituted an employment contract which limited MHA's right to terminate Flowers and (2) that Flowers was unlawfully deprived of his property rights in violation of his constitutional right to due process.[2] As a result of this holding, we reverse the trial court's order granting Flowers' motion for summary judgment, as well as the trial court's final order granting Flowers the remedies of back pay and reinstatement.

_____

[2]See Williams v. MHA, slip op. at 7 (citing Gregory v. Hunt, 24 F.3d 781, 787 (6th Cir. 1994)).

6

The trial court's judgment is hereby reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs on appeal are taxed to Flowers, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.

7