# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

_____

| | | |
|---|---|---|
| **JAMES CRITTENDEN,** | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Shelby Law No. 51927 T.D. |
| | ) | |
| **vs.** | ) | |
| | ) | Appeal No. 02A01-9609-CV-00211 |
| **MEMPHIS HOUSING AUTHORITY,** | ) | |
| | ) | |
| Defendant/ Appellant. | ) | |

**FILED**

**July 3, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

### APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE

### THE HONORABLE J. WYETH CHANDLER, JUDGE

For the Plaintiff/Appellee: _____

Alan Bryant Chambers
Jeff A. Crow, Jr.
Memphis, Tennessee

For the Defendant/Appellant:

Mark Beutelschies
Memphis, Tennessee

### REVERSED AND REMANDED

HOLLY KIRBY LILLARD, J.

CONCUR:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

OPINION

This is an action for breach of an employment contract and deprivation of civil rights under 42 U.S.C. § 1983. The trial court granted summary judgment in favor of the plaintiff employee. We reverse.

The facts in this case have been stipulated or are otherwise undisputed. Appellee James Crittenden ("Crittenden") was hired by Appellant Memphis Housing Authority ("MHA") as a temporary general office clerk. Eventually, Crittenden was promoted to the position of Temporary Manager I for Emergency Housing. This position was later reclassified to Permanent Manager I, retroactive to the date Crittenden became a temporary manager.

In its operation, MHA is partially governed by federal laws, rules, and regulations, implemented by the U. S. Department of Housing and Urban Development ("HUD"). MHA entered into an Annual Contributions Contract with HUD prior to Crittenden's employment. Under the Annual Contributions Contract, MHA cannot enter into a contract for personal services for more than two years without the prior approval of HUD.

From the end of 1991 through February 1992, HUD conducted a review of MHA's operations, including its employment practices. As a result of this review, HUD issued a report which concluded in part that Crittenden had been improperly hired for the position of Manager of Emergency Housing.

Because HUD concluded that Crittenden had been improperly hired, HUD required MHA's Board of Commissioners to certify that Crittenden would be terminated in accordance with the requirements of the Annual Contributions Contract. If this were not done, HUD stated that MHA would face sanctions. These sanctions could include having MHA's requests for reimbursement under the Annual Contributions Contract denied or having MHA's property taken over by HUD, pursuant to provisions of the Annual Contributions Contract.

MHA sent a letter to HUD requesting reconsideration of the directive to terminate Crittenden. This request was denied.

As it had been directed by HUD, MHA terminated Crittenden on April 28, 1992. The parties stipulated that the termination was due to HUD's requirements, and that Crittenden was not terminated due to his work performance. Crittenden requested a grievance hearing, but this request was later withdrawn.

During Crittenden's employment with MHA, MHA had in effect an employee handbook

known as its Manual of Operations. The Manual's forward states:

> This is the official Manual of Operations for the Memphis Housing Authority. Its purpose is to arrange for ready reference a review of the policies, relationships, and procedures of [MHA]. It is intended primarily as a guide for employees in the discharge of their duties.

Article IV of the Manual, entitled "Amendments," provides:

> The Manual of Operations and the By-Laws of [MHA] may be amended by any special or regular meeting of the Board of Commissioners by a simple majority of said Commissioners, there being a quorum present.

Section 208 of the Manual, entitled "Employment and Personnel Regulations," provides:

> All employment and personnel procedures shall be regulated by the provisions hereinafter provided in this section and elsewhere in this Manual.

In this section, the Manual lists four reasons for termination of services: resignation, dismissal for just cause, retirement, and reduction in force. The Manual also lists causes for which an employee may be suspended, demoted, or terminated, and it divides the causes into two categories, major infractions and other infractions. After listing examples of infractions, the Manual states:

> None of the aforementioned Major or Other Infractions will be deemed to prevent the dismissal, demotion, suspension, or disciplinary action of an employee for just cause. JUST CAUSE shall exist when [MHA] has a reasonable basis for the action taken even though such cause is not contained in those mentioned above.

Section 304 of the Manual, entitled the "Personnel Grievance Procedure," sets forth a procedure whereby employees may file "grievances concerned with the interpretation and/or application of [the Manual], its directives, procedures, working conditions and discipline." Finally, Section 401 of the Manual, entitled "Purpose," provides:

> This Manual of Operations contemplates that every [function] of [MHA] shall be carried out by its members and employees strictly in accordance with policies and procedures adopted by [MHA], and incorporated in the Manual.

After his discharge, Crittenden was chronically ill and would have been unable to perform his work duties for a period of eleven months from his discharge through the date of the trial court's order. In addition, Crittenden tended to the health needs of his terminally ill father, from six months from the date of Crittenden's discharge until the date of his father's death.

In February 1993, Crittenden filed a lawsuit against MHA, alleging that MHA's Manual of Operations was an employment contract and that he was terminated without just cause and in breach of his employment contract with MHA. In June 1995, Crittenden filed a motion to amend the complaint to include a claim for deprivation of civil rights, and for the amendment to relate back to

2

the date of the original filing of the complaint.

MHA filed a motion to dismiss and for summary judgment, which was denied. Subsequently, Crittenden filed a motion for summary judgment. MHA filed a Motion for Leave to Renew Motion for Summary Judgment. The trial court conducted a hearing on Crittenden's motion to amend and motion for summary judgment, as well as MHA's motion to renew its motion for summary judgment. The trial court granted Crittenden's motion for leave to amend and for relation back, denied MHA's motion to renew its motion for summary judgment, and granted Crittenden's motion for summary judgment.

In granting summary judgment in Crittenden's favor, the trial court found that Crittenden was terminated by MHA based on HUD's demand, and that the reason for HUD's demand was irregularities in Crittenden's hiring that were caused by MHA, not Crittenden. The trial court determined that MHA's Manual of Operations limited discharges to those for "just cause" and created "a reasonable expectation of continued employment." It found that Crittenden's termination was not for "just cause" and was a breach of Crittenden's "contract for employment" with MHA. It also concluded that Crittenden had a "property right in his job" based on "a reasonable expectation of continued employment" and that MHA had deprived Crittenden of this property right contrary to Article 1, Section 8, of the Tennessee Constitution and without due process of law under the Fourteenth Amendment to the United States Constitution. It found this to be a violation of 42 U.S.C. § 1983. It awarded Crittenden $38,662 in damages as back pay and ordered him reinstated as Manager of Emergency Housing if and when the position became available. MHA now appeals the decision of the trial court.

On appeal, MHA contends that the trial court erred in granting Crittenden's motion to amend his complaint, in granting Crittenden's motion for summary judgment, and in denying MHA's motion for leave to renew its motion for summary judgment. MHA also appeals the relief awarded Crittenden. We conclude that the outcome of this appeal is controlled by this Court's recent decision in *Williams v. Memphis Housing Authority*, No. 02A01-9608-CV-00190, slip op. at 2-6 (Tenn. App. June 2, 1997).

In *Williams v. MHA*, two MHA employees were terminated under circumstances substantially similar to those under which Crittenden was terminated. As in this appeal, in *Williams v. MHA*, the dispositive question was whether MHA's Manual of Operations constituted an

3

employment agreement which contractually limited MHA's right to terminate the employees. We determined that the Manual of Operations was not an employment contract that limited MHA's ability to terminate an employee, reasoning as follows:

Because Tennessee adheres to the "employee-at-will" rule, a presumption arises in this state that an employee is an employee at will. ***Davis v. Connecticut Gen. Life Ins. Co.***, 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990). Under this well-established rule, a contract for employment for an indefinite term is considered a contract at will which can be terminated by an employer (or an employee) at any time without cause. ***Bringle v. Methodist Hosp.***, 701 S.W.2d 622, 625 (Tenn. App. 1985); *accord Graves v. Anchor Wire Corp.*, 692 S.W.2d 420, 422 (Tenn. App. 1985); ***Whitaker v. Care-More, Inc.***, 621 S.W.2d 395, 396 (Tenn. App. 1981).

In recent years, the courts of this state have recognized, at least in theory, that an exception to the at-will rule may arise where an employer promulgates an employee handbook which confers certain benefits on employees. In order to be considered part of the employment contract, however, the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions. ***Smith v. Morris***, 778 S.W.2d 857, 858 (Tenn. App. 1988). Unless the employee handbook contains specific guarantees or binding commitments, the handbook will not constitute a contract. ***Whittaker v. Care-More***, 621 S.W.2d at 397. As stated by one court, "the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material, such as an employment application." ***Claiborne v. Frito-Lay, Inc.***, 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989). Our research has revealed few instances in which appellate courts of this state have concluded that the language of an employee handbook was binding on an employer. *See Williams v. Maremont Corp.*, 776 S.W.2d 78 (Tenn. App. 1988) (holding that terms of employee handbook were binding on employer where handbook provided that employees would be recalled in order of seniority); *Hamby v. Genesco, Inc.*, 627 S.W.2d 373 (Tenn. App. 1981) (holding that employee handbook's "rollback" provision was binding on employer where handbook provided that, for so long as employment relationship continued, handbook contained guaranteed policies, practices, and procedures of employer); *see also Hooks v. Gibson*, 842 S.W.2d 625 (Tenn. App. 1992) (concluding that employee handbook became part of employment contract where handbook was promulgated pursuant to agreement between employer and state and employees were third-party beneficiaries of such agreement). . . .

After carefully reviewing the specific language contained in MHA's Manual of Operations, we conclude that the Manual's provisions are insufficient to overcome the presumption that [the Employees] were at-will employees. The Employees contend that the Manual contains sufficient guarantees to be binding upon MHA because the Manual specifically contemplates that all MHA functions "shall be carried out by its members and employees strictly in accordance with" the Manual's policies and procedures and, further, because the Manual states that "[a]ll employment and personnel procedures shall be regulated by" the Manual's provisions. If this language evidences an intent on the part of MHA to be bound by the Manual's provisions, however, such intent is contradicted by the existence of a provision in the Manual giving MHA's Board of Commissioners the authority to amend the Manual at any special or regular Board meeting. "Any language that preserves a unilateral right on the part of the employer to alter or modify the contents of [a] handbook" generally precludes the handbook from being considered part of the employment contract. ***Claiborne v. Frito-Lay, Inc.***, 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989); *see, e.g., Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn. App. 1988) (handbook's language clearly showed "that modifications were anticipated"); ***Bringle v. Methodist Hosp.***, 701 S.W.2d 622, 624 (Tenn. App. 1985) (handbook reserved to employer "right to change and abolish policies, procedures, rules and

regulations"); *Gregory v. Hunt*, 24 F.3d 781, 786 (6th Cir. 1994) (handbook provided that policies were "subject to change by management, unilaterally and without notice"); *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1279 (M.D. Tenn. 1990) (handbook reserved to employer "right to change any or all such policies, practices and procedures in whole or in part at any time, with or without notice"). Such language instead indicates "that the handbook simply constitutes[s] a set of guidelines or a source of information for an employee." *Claiborne v. Frito-Lay*, 718 F. Supp. at 1321. In the case of MHA's Manual of Operations, this conclusion is further supported by language indicating that the Manual's purpose "is intended primarily as a guide for employees in the discharge of their duties."

Even if the Manual of Operations' language demonstrates an intent on the part of MHA to be bound by the Manual, we find nothing in the Manual's provisions which would alter the Employees' status as at-will employees. First, we note that the Manual did not entitle the Employees to a specific term of employment because the Manual's provisions gave the Employees no assurances of employment for any definite time. *See Graves v. Anchor Wire Corp.*, 692 S.W.2d 420, 421 (Tenn. App. 1985); *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395, 397 (Tenn. App. 1981); *accord Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990) (concluding that, because Tennessee still clings to "employee-at-will" rule, presumption that employee is at will must be overcome by specific language guaranteeing definite term of employment). Moreover, contrary to the Employees' argument, the terms of the Manual did not limit MHA's right to terminate the Employees by requiring that any termination of services be for one of the enumerated reasons, such as just cause. Although the Manual listed only four reasons for termination, including resignation, dismissal for just cause, retirement, and reduction in force, this list did not purport to be exclusive. Indeed, the Manual's inclusion of reduction in force to this list contemplates that certain business exigencies may arise which necessitate dismissing employees for reasons other than just cause. In this case, therefore, we can find no language that unequivocally overcomes the presumption that [the Employees] were at-will employees. *See Gregory v Hunt*, 24 F.3d at 787; *Davis v. Connecticut Gen. Life Ins. Co.*, 743 F. Supp. at 1280.

*Williams v. MHA*, slip op. at 2-6 (footnotes omitted).

In accordance with *Williams v. MHA*, we conclude that the trial court erred in ruling that MHA's Manual of Operations constituted an employment contract which limited MHA's right to terminate Crittenden. This leads to the related conclusion that MHA's Manual did not grant Crittenden a protected property interest in continued employment with MHA. *See Williams*, slip op. at 7 (citing *Gregory v. Hunt*, 24 F.3d 781, 787 (6th Cir. 1994)). Since Crittenden had no protected property interest in his job, he is not entitled to relief under 42 U.S.C. § 1983. *See Board of Regents v. Roth*, 408 U.S. 564, 580 & n.1, 92 S.Ct. 2701, 2710 & n. 1 (1972).

5

Consequently, the trial court's decision granting Crittenden's motion for summary judgment is reversed, as well as the trial court's order granting Crittenden back pay and reinstatement. The remaining issues on appeal are pretermitted by this holding.

The decision of the trial court is reversed, and the cause is remanded for further proceedings consistent with this Opinion. Costs are taxed to Appellee Crittenden, for which execution may issue if necessary.

_____
**HOLLY KIRBY LILLARD, J.**

_____
**CONCUR:**

_____
**ALAN E. HIGHERS, J.**

_____
**DAVID R. FARMER, J.**